**GEO. J. MEYER MANUFACTURING CO., a Wisconsin corporation,**
Appellant,

v.

**SAN MARINO ELECTRONIC CORPORATION, a California corporation,**
Appellee.

Nos. 22592, 22592-A.

United States Court of Appeals,
Ninth Circuit.

Feb. 27, 1970.

Ellsworth R. Roston (argued), of Smyth, Roston & Pavitt, Los Angeles, Cal., for appellant.

Martin R. Horn (argued), of Spensley, Horn & Jubas, Los Angeles, Cal., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and SMITH, District Judge.*

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

RUSSELL E. SMITH, District Judge.

Plaintiff, appellee and cross-appellant, San Marino Electronic Corporation (San Marino) manufactures empty bottle inspection machines. Defendant, cross-complainant, appellant, cross-appellee, Geo. J. Meyer Manufacturing Co. (Meyer) manufactures a bottle inspection machine designated the Mark IV which is designed in part according to the teachings of U.S. Patent No. 3,133,640 (No. '640). No. '640 is the patent in suit.

To the extent important here the pleadings created issues as to the validity, infringement and misuse of Patent No. '640. The district court determined that Meyer had not been guilty of misuse; that No. '640 was invalid but if valid not infringed. The appeal and cross-appeal present those issues to this Court.

At the time of the issuance of Patent No. '640 there was an unfilled need for a device which would rapidly and efficiently inspect empty bottles and detect foreign particles in them. Meyer's Mark IV based in part on Patent No. '640 filled this need and was a commercial success.

*Validity*

The patent in suit envisages a device which may be described: At the bottom is a light source, over which is a glass light diffuser. Over that is the bottle to be inspected and over the bottle is a lens which focuses the diffused light passing through the bottle to a revolving reticle. The light as it is affected by the reticle strikes a photo-electric cell. The centers of the light source, the opal glass diffuser, the reticle and the photo-electric cell all have a common vertical axis.

To the circuits

20  Light Source

22  Opal Glass Diffuser

10  Bottle

28  Lens

30  Reticle

24  Photocell

36  Motor

38  Pulley

The reticle is a disc divided into alternating opaque and translucent pie-shaped segments of equal area. The patent illustrates a reticle which has seven opaque and seven translucent segments and which revolves 167 times per second. It appears in the patent drawings:

Reticle

As the bottle passes over the light source, an examination occurs. This examination continues during the time that the center of the bottle is being conveyed from a position approximately one-sixteenth of an inch in front of the center

of the light source to one-sixteenth of an inch beyond the center of the light source. The reticle makes at least one complete revolution during this period of time.

If the bottle is clean and clear then, since the quantity of light does not change as the reticle turns a maximum and relatively constant amount of light passes through the reticle to the photocell and produces a relatively high direct current. Under these conditions the direct current circuit operates to prevent the reject mechanism from acting. If, however, the bottle itself is sufficiently opaque, or if a relatively large foreign object restricts the passage of light, then the direct current produced by the photocell is reduced and at a predetermined level of reduction the direct current circuit causes the bottle to be rejected.

If there is a foreign object in the bottle of a size too small to reduce the direct current output of the photocell to the predetermined level of reduction the bottle will be rejected by the alternating current circuit. As the reticle rotates any foreign particle in the bottle will be alternately covered and uncovered. When the foreign object is covered by an opaque section of the reticle, then a maximum amount of light passes through the unobstructed translucent segments. This amount of light is diminished when the foreign object restricts the passage of light through one of the translucent segments. As a result of the operation of the reticle, light in varying intensities strikes the photocell which in turn emits energy in the form of an alternating current signal the frequency of which is determined by the number of spokes in the reticle times the revolutions per second. The frequency of the alternating current signal generated by a small particle in the bottle is different from the frequency generated by the edge of the bottle and variations in the general background of the bottle such as those caused by the edge, lettering or differences in the thickness or coloring of the glass. The circuits are designed to discriminate among alternating currents of different frequencies and the circuit is tuned to select, for rejection purposes, the frequency generated by the foreign object in the bottle. As a result of this frequency discrimination the reject mechanism operates in the presence of a foreign object of relatively small size, but does not operate to reject bottles because of the effects produced by the general background. The use of the alternating current signal to discriminate among these several effects was a substantial improvement in the prior art.

It is not claimed that there was anything new in the electrical circuits employed, but it is claimed that the use of a centered optical system in which light is passed through a bottle and reticle having equal opaque and translucent segments and onto a photo electric cell which in turn emits an alternating current signal which is then electronically processed to distinguish between foreign particles and other discontinuities in the bottle being inspected did constitute an invention. The evidence shows, and the district court found, that no such technique had been employed in the bottle inspection field. In the star tracking and missile tracking field however multislit scanners similar to that used by Meyer had been used to convert radiations from a star or missile into an alternating current and to distinguish by electrical circuity between the signal given by the star or the missile and signals produced by the general background. The heart of the district court's decision is contained in the following findings and conclusions.

*Conclusion of Law 13*

"If the missile and star tracking field cannot be properly considered with the bottle inspection field as a single art of detecting objects in a field of view by electro-optical techniques, the system disclosed and claimed in the '640 patent constitutes an invention over the prior art relating to bottle inspection, and the patent is valid."

*Finding of Fact 9 and Conclusion
of Law 5*

"The nature of the art we are here concerned with is the detection of foreign objects in a field of view by electro-optical techniques, rather than being limited to the bottle inspection field."

■ Under the circumstances of this case what is the "art to which said subject matter pertains?" [1] Meyer takes the position which we think untenable that the relevant art is the art of bottle inspection. The very narrow approach suggested by Meyer has been rejected in this Circuit. In Aerotec Industries of California v. Pacific Scientific Company, 381 F.2d 795 (9 Cir. 1967) the court held that the concept of a spring wound reel which can be caused to lock up when it is suddenly accelerated, the locking mechanism being operated by the inertia of a member built into the reel for that purpose, as it had been applied to trolley catchers was relevant to a similar device used in a harness for airplane pilots. Under this decision we cannot confine our consideration here to the field of bottle inspection but must venture somewhere beyond that field to determine the area of the relevant art.

It may be that at an earlier time in our history most inventions relating to locks were made by locksmiths and most inventions relative to plows were made by those who made or used plows. At that time and in those days perhaps the "subject matter" of the invention was the lock or plow and the "art" the art of lock and plow making. In today's world, a world of extensive and rapid communication of scientific and industrial knowledge—a world of institutions of higher learning and private laboratories which gather men of all disciplines and direct their talents not only to the discovery of basic truths but to the solutions of specific problems, the questions arising in a particular industry are answered not only by those who have learned the lessons of that industry but also by those trained in scientific fields having no necessary relationship to the particular industry. These considerations lead us to believe that today the word "art" includes not only the knowledge accumulated with respect to a problem in a particular industry but that accumulated in those scientific fields the techniques of which have been commonly employed to solve problems of a similar kind in the particular and closely related fields. In the bottle inspection field the sciences of optics and electronics had been widely used and as new electronic and optical techniques were developed to solve, in related fields, problems of the kind presented by bottle inspection, then those techniques became part of the relevant art. We agree with the trial court's finding No. 10.

*Finding of Fact 10*

"Electro-optical systems for the detection of objects in the sky, detection of material moving on a conveyor, detection of the presence of objects moving on the ground, and detection of objects in a container, all are systems which reside in an analogous art, and such systems employ similar elements in a similar relationship for a similar purpose. Further, such systems are related by the end object of seeking to detect an object having distinct light or dark characteristics in a background of different light or dark characteristics."

This approach to the problem, if not required, is at least foreshadowed by the language of Mr. Justice Clark, speaking for the Supreme Court in Graham v.

---

1. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill *in the art to which said subject matter pertains.* Patentability shall not be negatived by the manner in which the invention was made." 35 U.S.C.A. § 103. (Emphasis added.)

John Deere Co., 383 U.S. 1 at page 19, 86 S.Ct. 684, at page 694, 15 L.Ed.2d 545 (1966):

"Moreover, the ambit of applicable art in given fields of science has widened by disciplines unheard of a half century ago. It is but an evenhanded application to require that those persons granted the benefit of a patent monopoly be charged with an awareness of these changed conditions. The same is true of the less technical, but still useful arts. He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office."

Meyer relies upon Sperry Products, Inc. v. Aluminum Company of America, 171 F.Supp. 901 at p. 911 (N.D.Ohio E.D. 1959).[2] In that case the patent in suit used a pulse echo method employing sound waves to detect flaws in metal. The analogous art was claimed to be a device using the pulse method employing electro-magnetic waves to detect ionized layers in the atmosphere. In both cases the pulse echo method was used but in one case the problem involved solid matter and variations in its composition while in the other the problem did not relate to the composition of the matter the atmospheric particles) or the uniformity of it, but rather to the electrical charge possessed by the particles. In the one case sound pulses were used, in the other electro-magnetic pulses. The problem of the bottle inspector and the missile tracker is the same—to detect any light giving or light interrupting foreign objects against a background. Biberman,[3] who was interested in targets in the sky, used a revolving reticle to produce an alternating current in the presence of a foreign object against the background of the sky, and the inventors named on patent '640 used the same device to produce an alternating current in the presence of a foreign object in a bottle. We conclude that Sperry Products, Inc. is not contrary to the view expressed here.

Assuming that the relevant art includes star and missile tracking, is patent No. '640 valid as a combination patent? We think not. The district court found that what the inventors of No. '640 did was not surprising or unobvious to one skilled in the art. The court inspected the prior art and found that

A central optical system providing a radial scan [4]

The use of direct current to detect objects in containers [5]

The use of alternating current to detect foreign objects [6] had all been described.

The court found, and no contention to the contrary is made, that the art of attenuating alternating curren signal components having undesirable frequencies to emphasize other signal components and the art of emphasizing particular alternating current frequencies is well known.

It cannot on the record here be said that the district court's fact findings on the combination patent problem were clearly erroneous. The result reached, once the relevant art problem has been decided, is in accord with the statutory requirement of non-obviousness and the "strict observance" of the statute required by the recent decisions of the Su-

2. Affirmed without comment on the issue here in Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911 (6th Cir. 1960), cert. den., 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87 (1961).

3. U. S. Patent No. 3,034,405.

4. Stoate, British Patent 517,229; Biberman, U. S. Patent No. 3,034,405 (relating to star and missile tracking).

5. Stoate, British Patent No. 517,229; Gulliksen, U. S. Patent No. 2,265,037; Schell. U. S. Patent No. 2,439,490.

6. FitzGerald, U. S. Patent No. 2,016,036 (detecting moving objects only); Biberman, U. S. Patent No. 3,034,405; Schell, U. S. Patent No. 2,439,490; Weathers, U. S. Patent No. 2,192,568 (misdescribed in the findings as No. 2,427,319).

preme Court.[7]  We agree with the district court that patent '640 is invalid for want of invention.

### Misuse

 The district court, in detailed findings, found that there had been no misuse.  In view of our disposition of the validity issue the issue of misuse is important only insofar as it relates to attorneys' fees.  On the whole record we cannot say that there was such deliberate and willful misconduct[8] on the part of Meyer to make this the exceptional[9] case justifying the award of attorneys' fees.

Without therefore reaching the issue of infringement or of patent misuse as it would affect the enforcement of the patent, the judgment is affirmed.

---

7.  Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (U. S. Dec. 8, 1969).

8.  Florida Brace Corporation v. Bartels, 332 F.2d 337 (9 Cir. 1964).

9.  35 U.S.C. § 285.