**Lloyd J. BONTRAGER and Jayco Inc., Plaintiffs,**

v.

**STEURY CORPORATION, Defendant.**

**No. S 75–133.**

United States District Court, N. D. Indiana, South Bend Division.

June 14, 1978.

Eugene C. Knoblock, South Bend, Ind., for plaintiffs.

Charles W. Ainlay, Goshen, Ind., Richard Bushnell, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This memorandum will reflect the legal basis for the separately entered findings of fact and conclusions of law.

This is an action in which Lloyd J. Bontrager and Jayco Inc. charge the Steury Corporation with infringement of claims 1, 2, 6, 7 and 10 of U.S. Patent No. 3,495,866 relating to a collapsible vehicle. Steury denies infringement on the grounds that Bontrager has no valid patent right and, in any event, the patent claims do not cover Steury's structure.

Invalidity is shown by citations of prior art and expert testimony which establish that the elements and functions of Bontrager's combination patent claims are old and provide no new or synergistic result. Thus, the claimed subject matter was obvious and the claims are invalid under 35 U.S.C. § 103.

The record also establishes irregularities in the filing of the Bontrager patent application covering the subject matter conceived by Glen Riegsecker and not by Bontrager. Principal claim 1, when stripped of Riegsecker's contibutions, is fully anticipa-

ted by the prior art and is invalid under 35 U.S.C. § 102.

In view of the failure to join Riegsecker as an inventor while still including his ideas, the claims are also invalid under 35 U.S.C. § 112 for overclaiming. Bontrager's admission that the alleged improvement over his own prior patent (PX 15) lies solely in the lift establishes that he was further guilty of overclaiming since the claims purport to cover the entire vehicle.

Noninfringement is established by showing that the claims include elements for which there is no corresponding or equivalent element in Steury's accused structure. In fact, the accused structure is so significantly different from Bontrager's that the Patent Office granted Steury its own patent.

The patent in suit, Patent No. 3,495,866, issued to Lloyd J. Bontrager is the inventor. The patent claims are directed to a "collapsible vehicle" having a lift or jack mechanism for raising and lowering a movable top. With this language, the Bontrager claim purports to cover all types of mobile units having collapsible tops (R. pp. 458, 528). As a specific example, the patent discloses a camping trailer.

Prior to starting his own business [1], Jayco Inc., Bontrager was employed by Starcraft Corporation in the Goshen area. While so employed, in about 1964, he was given the assignment of developing a camping trailer. His first step was to attend a trade show and examine competitive units. He then set about to build a collapsible camper for Starcraft. A Starcraft distributor suggested that he provide some type of lift for raising the top and he then developed a lift system which is covered in a patent No. 3,314,751 (PX 15), issued to Bontrager, but assigned to his then employer, Starcraft. The Starcraft-owned patent is prior art with respect to Bontrager's later work.

The vehicle disclosed in Bontrager's Starcraft-owned patent is a conventional camping trailer except for a lift or jack mechanism for raising the top, which lift includes four telescopic posts located at the vehicle corners. Each post has an outer bottom section, an intermediate section, an inner top section and interconnected cable and pulley means carried by said sections for extending the intermediate and top sections during operation of the lift. In order to operate all of the posts simultaneously, the patent teaches the use of a single winch having a main cable wound thereon and four separate cables attached to the main cable and directed around suitably placed pulleys to each of the corner posts.

It was with this work background at Starcraft that Bontrager quit his job during January, 1968, and promptly, on February 1, 1968, incorporated his present company, Jayco Inc., for the purpose of going into the camping trailer business.

Bontrager knew he could not use an exact duplicate of his old lift since it was covered in the Starcraft-owned patent and he also testified that he knew he could come up with something which would sell (R. p. 134). His solution for avoiding his own prior patent was to substitute suitably guided thrust members or flexible push rods connected directly to the lower end of the inner top post sections and to the four winch cables to raise the posts.

At the start, Bontrager's company, Jayco, employed Glen Riegsecker [2] to help with building the first Jayco trailer. In the course of his work, Riegsecker conceived some ideas of his own (See Riegsecker deposition, DX FF, pp. 25, 26) which were incorporated into the lift mechanism. These ideas included:

(a) interengaging stops between the sections of the telescoping posts for limiting extension of the posts.

---

1. Bontrager owns 75% of the Jayco stock.    2. Now a Vice President of Jayco.

(b) an arrangement of individual cables extending inside of rectangular horizontal guide tubes at each of the corner posts and connected to the various thrust members for actuating the same.

For these ideas, Bontrager agreed to pay Riegsecker 50¢ unit for all trailers sold by Jayco. This agreement is memorialized in the minutes of the February 19, 1968, Jayco Board of Directors meeting (DX GG).

After a brief Patent Office examination, and a telephone interview with the Examiner, the Bontrager patent in suit issued on February 17, 1970. Only a single prior art patent was cited by the Examiner, i. e. Hagenson 3,273,934 (DX P).

In the winter of 1970, Bontrager became aware of the Steury structure which he now charges with infringement and on February 2, 1971, Bontrager caused his attorney to address a letter (PX 17–1) to Mr. Virgil Steury charging infringement of the patent in suit. After investigation, Steury's attorney, Charles W. Ainlay, forwarded a letter (PX 17–3) dated March 31, 1971, to Mr. Knoblock denying infringement. Thereafter, Steury received no further word or complaint from Bontrager for several years until on January 31, 1975, Bontrager sent a letter (PX 17–4) to Virgil Steury referring to a substantially contemporaneous telephone call with Steury. In this letter, Bontrager demanded a royalty for himself and also for Glen Riegsecker. On February 12, 1975, Virgil Steury replied to Bontrager (PX 17–5) and again advised him that there was no infringement of the Bontrager patent.

Thereafter, on July 25, 1975, this Action was filed. Bontrager has asserted only claims 1, 2, 6, 7 and 10 of his patent to be infringed.

The Steury Corporation operated by Virgil Steury and his brother, Edwin Steury, commenced business in 1957 and initially engaged in the manufacture and sale of fibreglass boats. A variety of fishing boats and runabouts using outboard engines and also inboard/outboard drive systems were produced. In the course of developing their boats, the Steurys became familiar with and used various mechanical actuating mechanisms incorporating pulley and cable systems and/or flexible thrust members or push rod systems for such purposes as steering, clutch operation, throttle control, etc. One such system using the well known Bowden cable concept or, in other words, a flexible push or thrust member operating in a guide tube, was produced by Teleflex Corporation as shown in DX BB.

During the early 1960's, Steury expanded its business into the recreational vehicle field and commenced to manufacture and sell camping trailers having a collapsible top. Initially, the tops were supported by spring biased folding arms which required the owner manually to manipulate the top to raise and lower it.

Subsequently, Steury became aware of various lift mechanisms whereby an operator could turn a single crank for simultaneously raising and lowering all corners of the trailer top. One such lift mechanism which early came to their attention was the Starcraft lift mentioned above. The Starcraft lift was being successfully sold back in 1967 and indeed still is being successfully sold. However, to the Steurys, the use of four separate cables extending from the main cable and around various pulleys to various positions on the trailer presented manufacturing and adjustment problems they wished to avoid.

Sometime after Bontrager started his new business, he invited both Virgil Steury and Edwin Steury to visit Jayco to see his new trailer top lift. At that time, they recognized that while Bontrager had modified the Starcraft structure by incorporating the general idea of flexible push or thrust members functioning in a manner similar to the Teleflex control for extending the posts, he was still using the Starcraft patent concept of four separate cables and

multiple pulleys extending from the winch to each of the corner posts which they did not like.

In 1969 and before the Bontrager patent in suit issued, Steury also learned of a lift being produced by Corl Corporation in Breman, Indiana. This lift, which incorporates the structure shown in Hostetler et al. 3,508,782 (DX T) of record herein, uses flexible push rods in the form of springs for extending the telescoping post at corners of the trailer. However, Corl incorporated screw rods and cooperating nut elements and gears for actuating the corner posts. Steury purchased a number of the Corl lifts, and while the design was satisfactory, problems developed with respect to the quality of the Corl structure and the use of the unit was discontinued.

Thereafter, Virgil Steury conceived a structure for simultaneously actuating flexible thrust members for lifting a camper top with a simple single main cable connected to a winch and to all of the flexible members. This structure was incorporated into the Steury trailers on an optional basis in 1970, and, as pointed out above, became known to Bontrager at that time. This Steury structure is essentially disclosed in Steury Patent No. 3,674,305 (DX AA). The United States Patent Office cited as prior art in the Steury application, the Bontrager patent in suit and recognized the fact that the Steury mechanism significantly distinguishes over the Bontrager structure by allowing the Steury patent claims.

After receiving, investigating and rejecting the Bontrager notice of infringement in 1971, Steury continued to offer its accused lift as an option in its camping trailers for several years. Upon the passage of a long period of time, and having heard nothing further from Bontrager, Steury decided in mid 1974 to make its lift part of the standard equipment of its 1975 model trailers. The adoption of the lift as standard equipment resulted in increasing use of the lift from 15% to 100% of the trailers being produced. Thereafter Bontrager again asserted his patent.

The Bontrager patent contains ten separate claims. The only claims which have been charged to be infringed and are in issue in these proceedings are claims 1, 2, 6, 7 and 10. Thus, Plaintiff has admitted that the design of the accused Steury structure is significantly different from and does not come within the scope of the remaining nonasserted claims, i. e. claims 3–5, 8 and 9.

As stated above, the claims in issue are directed to a collapsible vehicle of any type and the Bontrager patent drawings and specification describe one such vehicle in considerable detail. For convenience, FIGURES 3 and 4 of the Bontrager patent drawings are reproduced along with the claims in issue below. In each of the claims, reference numerals taken from the Bontrager drawings have been inserted to identify the disclosed Bontrager parts corresponding to the claim language. As one reads through the patent claims, it will be observed that the parts may be thought of as being in three main groups comprising:

*Group (a)*

a *collapsible vehicle* (20, 24) having a wheeled body (20) and a shiftable top (50);

*Group (b)*

a *lift or jack* at each corner of the vehicle comprising a telescopic post (60, 68), a flexible post elevating member (86) and cooperable curved tracks (76) and horizontal guide tubes (84) for each flexible member; and

*Group (c)*

*actuating means* in the form of a winch (100, 102) having a main cable (106) wound thereon and connected by plate (108) to four separate cables (112, 114, 116, 118) extending from the main cable around pulleys (120, 122, 124, 125, 126, 128) to each of the flexible members.

BONTRAGER PATENT NO. 3,495,866

Fig. 3

Fig. 4

Claim 1

Group (a)

A collapsible vehicle comprising a wheeled body (20), a top (50) shiftable between a collapsed position on said body and an elevated position above said body.

Group (b)

a telescopic post (60, 64, 68) carried by said body (20) adjacent each corner thereof and connected to said top (50) and having inner (68) and outer (60) telescopic parts, a curved guide (76) carried by said body (20) below each telescopic post (60, 64, 68), a substantially horizontal guide tube (84) cooperating with each curved guide (76) and carried by said body (20), an elongated flexible substantially incompressible member (86) within and guided for endwise movement in each cooperating set of guide tube (84), curved guide (76) and telescopic post (60, 64, 68) and connected (86) to the lower end of the inner part (68) of the telescopic post, means (62, 66, 70, 72) carried by the

parts of each telescopic post for limiting the endwise extension of said post, and

*Group (c)*

means (100, 102, 106, 108, 112, 114, 116, 118, 120, 122, 124, 125, 126, 128) for shifting said flexible incompressible members endwise in said guide tubes (84) and said curved guides (76) and within said telescopic posts (60, 64, 68) to extend said posts and elevate said top (50).

*Claim 2*

A collapsible vehicle as defined in claim 1, wherein said flexible incompressible members (86) constitute tight wound coil springs.

*Claim 6*

A collapsible vehicle as defined in claim 1, wherein each telescopic post includes outer (60) and intermediate (64) tubes of continuous cross section.

*Claim 7*

A collapsible vehicle as defined in claim 1, wherein said body (20) has a floor (30) and vertical walls (32), each telescoping post (60, 64, 68) being carried by and extending vertically on a wall (32) and terminating spaced above said floor (30), each curved guide (76) and guide tube (84) being secured to said floor (30), the upper end of each curved guide (76) being aligned with the lower end (60) of a telescoping post.

*Claim 10*

A collapsible vehicle as defined in claim 1, wherein said posts (60, 64, 68), curved guides (76), guide tubes (84), incompressible members (86) and means (100, 102, 106, 108, 112, 114, 116, 118, 120, 122, 124, 125, 126, 128) for shifting said incompressible members are confined within the vehicle (20) when collapsed.

The prior art of record in the present case includes many patents which are presented to show that each individual element utilized by Bontrager and disclosed and claimed in his patent was simply an old well known mechanical device selected by Bontrager to serve its well known function in his unit. Additional prior art patents are included for the purpose of giving a broader background as to the state of the art.

The prior art also includes well known cable and pulley steering mechanisms and the like used in boats by Steury and others and flexible push rod or thrust member controls or actuating devices also used by Steury and others and exemplified by a Teleflex brochure (DX BB).

The prior art still further includes ideas which were given to Bontrager by Riegsecker and for which Riegsecker has admitted at pages 25 and 26 of his deposition transcript, DX FF, he is being paid 50¢ a unit "because of my ideas that I put into the lift" which included "the way we mounted the pulley brackets to the floor track and the way the cable runs inside that track and connects to the spring" and "the lift stop—or, the post stops, telescopic post stops" and "the way we bolted—the way we came up with on of the pulley brackets for one of the tracks, a different one from the rest".

In Defendant's Exhibit G, a schedule is set up of the principal individual parts disclosed in the Bontrager patent and identified with reference numerals. These parts are compared with structurally and functionally identical components found in the prior art. The exhibit also includes a complete copy of the Bontrager patent in suit and copies of the most pertinent prior art references for easy comparison.

Exhibit G need not be repeated here, but analysis of the exhibit may be facilitated by recognizing that the Group (a) parts comprising the wheeled body and the Group (c) components comprising the actuating means or winch, cables and pulleys referred to above are essentially identical to the corresponding parts found in the Starcraft-owned earlier Bontrager patent (PX 15). This leaves for consideration only the parts in Group (b) pertaining to the lifts or jacks at each corner of the vehicle. The analysis

below and presented by the testimony of Mr. O'Brien at the trial clearly establishes that these elements and their functions are old and their use by Bontrager in the claimed structure is fully anticipated by and/or obvious in view of the prior art.

As pointed out above, Steury initially purchased from the Corl Corporation a lift mechanism constructed essentially as shown in Hostetler et al patent 3,530,872, DX T. Thereafter, Steury conceived of a single cable actuator wound on a winch for operating a plurality of flexible push rods simultaneously and in August, 1970, an application for Letters Patent on this concept was filed. The application issued as Patent No. 3,674,305, DX AA. For convenience, FIGS. 2 and 5 of this Steury patent are reproduced below.

By referring to these drawings, it is seen that the Steury concept was to provide a block 36 pulled by a *single* cable 74 wound on a winch and connected with a plurality of flexible push rods or thrust members 44 for simultaneous operation of the push rods. The flexible push rods slide through continuous guide tubes 56 which are variously bent so as to extend to telescopic posts 22 at the corners of the vehicle. A later version of the Steury lift is shown in a reproduction of an advertising piece below (PX 11–2).

[See following illustration.]

TELESCOPING ARMS ARE LAG BOLTED TO ROOF

CRANK TUBING IS LAG BOLTED AT BASE PLATE TO FLOOR

TO UP POSITION

TO DOWN POSITION

TELESCOPING ARM 20

ONE HEAVY DUTY PULLEY

CRANK ENTRY POSITION AT REAR OFF-DOOR-SIDE

FOUR EQUAL LENGTH PUSHER SPRINGS

ONE 7x19 AIRCRAFT CABLE 17' LONG

TOP SET OF PUSHER SPRINGS

LAG BOLTS

CABLE CLAMP

METAL STOP

TO CRANK

AIRCRAFT CABLE

CLUTCH TYPE WINCH IS BOLTED TO FRAME

BOTTOM SET OF PUSHER SPRINGS

In this modification, the single cable from the winch is doubled back upon itself after passing around a single pulley so as to have upper and lower sections moving in opposite directions with the upper section adapted to push two of the flexible rods in one direction and the lower section adapted to push the remaining two flexible rods in the opposite direction.

It is to be noted that in both of the Steury structures, there is but a single cable connected to all of the flexible push members and in the latest mode, there is but a single pulley. This is to be contrasted with Bontrager who requires four separate cables and eight pulleys. Furthermore, in the accused units, the winch, cable, guide conduits and portions of flexible push rodel therein and the attachment between the cable and the flexible push rods are all located underneath the floor of the vehicle and exteriorly of the vehicle body as distinguished from Bontrager's claim that all of his cables, pulleys, etc. are inside of the vehicle.

It is further to be noted that in both of the Steury constructions, there is no connection between the flexible push rods and

the corner posts as claimed by Bontrager (R. pp. 357, 358, 381, 382). To the contrary, the flexible push rods extend upwardly freely through the telescopic posts and bear directly against the underside of the vehicle top.

■ In approaching the question of whether a development is obvious, inquiry should be made as to (a) the scope and content of the prior art, (b) the differences between the prior art and the patent *claims*, and (c) the level of ordinary skill in the art. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.

■ While the Court must guard against reliance on hindsight, *Airtex Corp. v. Shelley Radiant Ceiling*, 536 F.2d 145 (7th Cir., 1976); *Walt Disney Production v. Niles*, 369 F.2d 230 (7th Cir., 1966), nevertheless, after determining the content of the prior art of which the craftsman is presumed to have knowledge, it is proper procedure to picture the craftsman as having all the prior art displayed before him while he is working on the development, *Leach v. Rockwood*, 273 F.Supp. 779, 789 (WD Wis., 1967); *Application of Winslow*, 365 F.2d 1017, 1020, 53 C.C.P.A. 1574 (1966); Judge (Justice) Stevens dissent in *Malsbary v. Ald Inc.*, (7th Cir., 1971) 447 F.2d 809; *Standun v. Polycraft* (ND Ill., 1976) 426 F.Supp. 649, aff'd, 7 Cir., 550 F.2d 395.

■ When it appears that each element in the claimed combination is old and performs only its known function, the claim must be scrutinized "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements", *Great A & P Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976).

■ A claim to a combination of old elements each performing its old and known function and providing no surprising or unusual or synergistic result must be held to be invalid for obviousness under § 103, *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Anderson's Black Rock v. Pavement Co.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); *St. Regis Paper Co. v. Bemis*, 549 F.2d 833 (7th Cir., 1977); *E–T Industries, Inc. v. Whittaker Corp.*, 523 F.2d 636 (7th Cir., 1975); *Henry V. Commercial Filters*, 489 F.2d 1008 (7th Cir., 1972); *Airtex Corp. v. Shelley Radiant Ceiling*, 536 F.2d 145 (7th Cir., 1976).

In recent cases including *Reese Products v. Elkhart Welding and Boiler Works*, 447 F.2d 517 (7th Cir., 1971); *Illinois Tool Works v. Sweetheart*, 436 F.2d 1180 (7th Cir., 1971); *Malsbary Mfg. Co. v. Ald Inc.*, (7th Cir., 1971) 447 F.2d 809 in which combination claims have been sustained in the face of a charge of obviousness, it appears that the courts found that the claimed combinations provided some new unobvious or unexpected result or a synergistic effect.

■ Secondary considerations such as longfelt need and commercial success or improved or more economical construction may be given consideration but cannot create a patentable invention from an obvious combination, *Anderson's Black Rock v. Pavement Salvage Co.*, supra; *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976).

In the present case, Plaintiffs apparently are urging secondary considerations including longfelt need, improved operation and commercial success. However, Plaintiffs contentions must fail not only because such considerations cannot create patentability where there is none, but also because the record simply does not support the contentions.

There was no longfelt need since Starcraft and RO-lite were already on the market with crank lifts for trailers and Starcraft is still the leading manufacturer of such trailers. Neither is there any credible evidence in the record establishing that the Jayco lift is in any way significantly more economical or more efficient than the Starcraft lift. Indeed Starcraft's continued

dominance of the camping trailer market clearly refutes plaintiff's contentions.

The assertion of commercial success falls flat since the record fails to establish any special connection between the sales of the Jayco trailer and the structure of the Bontrager patent claims. To the contrary, Bontrager admitted (R. pp. 127–130) that many factors contributed to the success of his trailer including frame constructions, interior design, furnishings and the like. This point is underscored by Jayco's brochure, PX 9, which lists sixteen features for the buyer to consider. The lift is only one of these features and moreover is only given the tenth spot in the list.

In determining the scope of the art which is relevant or analogous, a comparison of the art must be made with the patent claims, *Graham v. John Deere*, supra. In the present case, all of the claims are broadly directed to a "collapsible vehicle" and are not limited in any way to a camping trailer as was brought out by Mr. O'Brien's uncontradicted testimony (R. pp. 458–460, 528, 529). Plaintiffs urge that the limitation "camping trailer" must be read into the claims because the specification refers to such trailers. As stated in *Maclaren v. B–I–W Group Inc.*, 535 F.2d 1367, 190 USPQ 513 (2nd Cir., 1976):

"However, where the claim language is clear, it controls and may not be limited or distorted by resort to specifications, title or drawings. *Great A & P Tea Co. v. Supermarket Equipment Corp.*" . . [t]he controlling principle was perhaps best summarized by Judge Learned Hand in *Foxboro Co. v. Taylor Instruments Companies*, supra, 2 Cir., 157 F.2d 226 at 232, 70 USPQ at 343–344, where he said:

'A patentee who claims broadly must prove broadly; he may not claim broadly, and recede as he later finds the art unknown to him has limited his invention. That is the chance he must take in making broad claims;.' "

In this case Bontrager, having claimed broadly in the claims in issue cannot now read into the claims either the limitation of

a camping trailer or any other unrecited structure. Therefore, the relevant prior art includes not only cited patents pertaining to camping vehicles, but also the cited patents such as Wiesman and Oja et al. relating to other types of wheeled collapsible vehicles.

Still further, it will be recalled that Bontrager admitted that the development of the patent in suit was solely in the lift system (R. p. 145). Thus, the relevant prior art is broader than vehicles and includes lift systems or jacks generically and component parts useful therein. The art is analogous where there is a similarity of elements, problems and purpose. *Aktiebolag et al. v. B. F. Goodrich*, 420 F.2d 1358 (6th Cir., 1970); *Grant Inc. v. Keibler Industries Inc.*, 541 F.2d 284, 191 USPQ 424 (7th Cir., 1976).

Bontrager himself demonstrated how wide ranging the analogous art is to an experienced mechanic when he testified that he recognized that a screen door spring would have the properties he desired for his flexible push rod (R. p. 156) and he relied on his experience in the farm products division of Starcraft for a method of producing such a spring (R. pp. 154, 155). Riegsecker further testified as to the wide scope of the analogous art when he acknowledged that they recognized the spring casing used in a garden tractor choke control as suitable for use in the lift system (DX FF pp. 14, 15). As stated by Judge Flaum in *Sargent Industries, Inc. v. Sundstrand Corp.*, 189 USPQ 225 (ND Ill., 1975):

"The modern profusion of separate technical disciplines and corresponding fields of application requires a broad application from one field of art to another."

Judge Flaum then went on to give a lengthy quote from *Meyer Manufacturing Co. v. San Marino Electronic Corp.*, 422 F.2d 1285, 165 USPQ 23 (9th Cir., 1970). Since the reasoning set forth in this quote is particularly pertinent to the present case, it is repeated here:

"It may be that at an earlier time in our history most inventions relating to locks

were made by locksmiths and most inventions relative [sic] to plows were made by those who made or used plows. At that time, and in those days perhaps the 'subject matter' of the invention was the lock or plow and the 'art' the art of lock or plow making. In today's world, a world of extensive and rapid communication of scientific and industrial knowledge—a world of institutions of higher learning and private laboratories which gather men of all disciplines and direct their talents not only to the discovery of basic truths but to the solutions of specific problems, the questions arising in a particular industry are answered not only by those who have learned the lessons of that industry but also by those trained in scientific fields having no necessary relationship to the particular industry. These considerations lead us to believe that today the world 'art' includes not only the knowledge accumulated with respect to a problem in a particular industry but that accumulated in those scientific fields the techniques of which have been commonly employed to solve problems of a similar kind in the particular and closely related fields." 422 F.2d at 1288, 165 USPQ at 25–26.

In the present case, it is clear that the purpose of the Bontrager lift including four separate lifting devices or jacks was simply to raise and support a load or top. This is the same purpose of the lifting devices in the prior art cited and relied upon by Defendant.

A comparison of the Bontrager disclosed structural elements and functions with the prior art as set forth in Defendant's Exhibit G along with the testimony of Defendant's expert witness, Mr. O'Brien (R. pp. 467–476, 492–497, DX D, E and F) establishes beyond doubt that each and every element in Bontrager's mechanical system and its function was old and well known in the prior art at the time Bontrager made his development. The record shows that Bontrager does not disclose nor does he claim any new or syner-

gistic result flowing from his claimed structure. The top is raised and lowered in essentially the same manner as the tops or loads of the prior art systems. The decisions of the United States Supreme Court and the Seventh Circuit Court of Appeals have made it abundantly clear that such combinations of old parts must be held to be obvious and unpatentable under 35 U.S.C. § 103 since to hold otherwise would be to withdraw from the public that which was previously available for free use, *Great A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545; *Anderson's Black Rock v. Pavement Co.*, 396 U.S. 57, 24 L.Ed.2d 258 (1969); *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *E–T Industries, Inc. v. Whittaker Corp.*, 523 F.2d 636 (7th Cir., 1975); *St. Regis Paper Co. v. Bemis*, 549 F.2d 833 (7th Cir., 1977); *Henry v. Commercial Filter*, 489 F.2d 1008 (7th Cir., 1972); *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145 (7th Cir., 1976).

■ The question of obviousness when each element of the claimed subject matter is shown to be old in prior art patents and publications and no new or unobvious or synergistic result is obtained was very recently considered by this Court in *Saunders v. Air-Flo Company*, 435 F.Supp. 298 (1977). The factors present in the *Saunders* case which caused the Court to find Saunders patents invalid on the ground of obviousness are present in this case and require a finding that the Bontrager patent claims in issue are invalid.

Specifically, at the trial, it was demonstrated that Bontrager's principal claim, claim 1, finds full response in both structure and function in the prior art including Wiesman, DX V Hagenson, DX P, and Oja et al., DX Y. For convenience, drawings of prior art patents, Wiesman 2,017,300, Hagenson 3,273,934 and Oja et al. 3,283,732 are partially reproduced on the next pages.

In particular, it was pointed out that the prior art Wiesman patent, DX V, comprises a wheeled vehicle having a collapsible top and lift or jack means at corners of the vehicle incorporating every principal structural element and function defined in the claims.

W. A. WIESMAN          2,017,300

ADJUSTABLE LOAD SUPPORTING STRUCTURE

L. J. HAGENSON          3,273,934

FOLDING TRAVEL TRAILER

FIG. 1

C. W. OJA ET AL

LIFTING AND CONTROL MEANS

3,283,732

FIG. 2.

FIG. 5

It is noted that claim 1 specifies "means carried by the parts of each telescopic post for limiting endwise extension of said post". In Bontrager, this means comprises interengageable stops between the sections of the telescopic posts, while in Wiesman, the function is provided by limiting the distance which the means (element 29) for shifting the incompressible members can move. In any event, it would be obvious to provide interengageable stop elements between the sections of Wiesman's telescopic posts since the use of such extension limiting stops in telescopic posts or jacks is notoriously old as taught in Shaw 244,323 (DX H); Nitschke 1,070,167 (DX I); Dalton 2,324,614 (DX K). Furthermore the idea belongs to Riegsecker and not Bontrager.

Hagenson 3,273,934 is the only prior art patent cited by the patent Examiner during the prosecution of the Bontrager patent. At the trial, Mr. O'Brien showed that the patent Examiner was clearly in error in allowing the claims in issue over Hagenson in that he failed to analyze Hagenson's disclosure correctly. Specifically, he testified the Hagenson disclosed all of the essential elements of claim 1 comprising telescopic posts having inner parts 42 and outer parts 202, horizontal guides 46, 48 including curved corner portions aligned with each of the corner posts, and flexible incompressible means (links 42) shiftable from the horizontal guide up through the post sections 202 for raising the top. Thus, O'Brien testified that the patent Examiner erred in his analysis of the Hagenson patent and this testimony was not rebutted or challenged in any way by Plaintiffs.

Furthermore, the Examiner failed to make a proper search and uncover additional prior art patents such as Wiesman (DX V); Shaw (DX H); Nitschke (DX I); Dalton (DX K); Hauck 2,833,537 (DX M): Oja et al (DX Y), etc. which provide further examples of the conventional practice providing lifting devices or jacks with telescopic posts having inner and outer members around a flexible, incompressible thrust member support.

By referring to the Oja et al patent and Mr. O'Brien's testimony, (R. pp. 505–515) it is seen that again each and every principle element in claim 1 is taught by the prior art. Thus, Oja et al teaches a wheeled vehicle having a collapsible top 52, telescopic corner posts 15, 16, 21, flexible incompressible members 23 operating in guide tubes 18 which extend horizontally and then curve upwardly, means 26, 28, 36, 37, 39, 40 and 35 for shifting the flexible members and means 41 for limiting extension of the posts.

As pointed out above, the portion of claim 1 which refers to means for limiting extension of the post actually is directed to subject matter which Riegsecker admitted that he and not Bontrager contributed to the unit. It thus is apparent that this structure

is not a part of Bontrager's alleged invention and the remaining subject matter of the claims finds full response and is fully anticipated by the teachings of Wiesman (DX V), Hagenson (DX P), and Oja et al (DX Y). Whether we say Bontrager's invention as defined in claim 1 is fully anticipated and invalid under § 102 and/or sets forth an obvious combination of old elements and is invalid under § 103 is, perhaps, of little consequence. The result is the same and the claim is invalid.

Each of claims 2, 6, 7 and 10 is a dependent claim which refers back to claim 1. Thus, each of these claims includes all of the subject matter defined in claim 1 and simply adds thereto mechanical details. As was brought out at the trial, these details are obviously not critical and involve common mechanical expedients which were well known in the prior art at the time the Bontrager development was made. As this Court recognized in the *Saunders* case, when such mechanical details are known and are not critical and perform no new function, they do not make a development unobvious. As this Court said:

> "Inasmuch as the only features of the claims of the two Saunders patents which are not precisely defined in the Stamm patent and in the University of Maryland publication are not critical, as admitted by Mr. Saunders, and could be easily ascertained by anyone skilled in the art, as by test of a unit to observe the bug pattern on the trailer as explained by Mr. Gieger (R 683, 714), we have a classic basis for a determination of obviousness of the subject matter of the Saunders' claims . . . ."

*Claim 2*

This claim simply specifically defines the flexible incompressible members as constituting "tight wound coil springs". The prior art has long known of the use of such tight wound springs as flexible push rods or thrust members as demonstrated in the patents to Dalton (element 30) (DX K); Hauck (element 24) (DX M); Bell (element 50) (DX W); and the German patent (element 9) (DX U).

*Claim 6*

This claim further specifically defines each of the telescopic posts as including outer and intermediate tubes "of continuous cross section". Again, the use of telescopic tubes of continuous cross section is notoriously old in the prior art as taught in Dalton (DX K), Nitschke (DX I), Shaw (DX H), Wiesman (DX V), Harrison (DX Q) and Oja et al (DX Y).

*Claim 7*

This claim adds to the structure of claim 1 details which can only be described as obvious. Specifically, the claim defines the vehicle body as including "a floor and vertical walls". The telescopic posts are defined as being carried by the walls with ends above the floor and the curved guides and horizontal guide tubes are defined as being secured to the floor with ends of the curved guides in alignment with the posts. It is difficult to imagine anything that could be more obvious particularly in view of Bontrager's Starcraft-owned patent 3,314,715 (PX 15), Hagenson (DX P), Harrison (DX Q), Wiesman (DX V), Oja et al (DX Y) and Green (DX X).

*Claim 10*

This claim only states that the post, curved guides, guide tubes, incompressible members and means for shifting incompressible members are "confined within the vehicle when collapsed". Again, the obviousness of such an arrangement is self-evident and, in any event, is obvious from the teachings in the Bontrager Starcraft-owned patent (PX 15), Hagenson (DX Z), Harrison (DX Q), Wiesman (DX V) and Green (DX X).

█ It is a requirement of § 112 that in order for a patentee to inform the public as to the scope of his alleged invention:

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the *subject matter which the applicant regards as his invention*." (Emphasis added)

As previously set forth, claim 1 and thus *all* of the claims includes ideas which were not part of any Bontrager development but, to the contrary, were part of Riegsecker's ideas. Thus, Bontrager has been guilty of overclaiming and the claims in issue do not comply with the requirements that they particularly point out and distinctly claim the Bontrager developments. Under such circumstances, the claims are invalid. *Aetna Ball & Roller Bearing Co. v. Standard Unit Parts Corp.*, 198 F.2d 222 (7th Cir., 1952); *Holstensson et al. v. V–M Corporation*, 139 USPQ 401 at 413 (6th Cir., 1963).

As a result of admissions made by Bontrager at the trial, a further basis for holding the claims invalid for overclaiming has been clearly established. Specifically, Bontrager testified that the "Jayco system is an improved Starcraft system" (R. p. 133) and further at R. p. 145:

"Q. And so when we get right down to it, the initial Jayco trailer was just about the same as Starcraft, except for the lift. Is that right?

A. Correct."

This is an unequivocal admission that Bontrager's development was limited solely to the lift. Thus, the facts are on all fours with the recent case of *Jamesbury Corp. v. Litton Industrial Products, Inc.* (DC Conn., 1977), 442 F.Supp. 266, 196 USPQ 544. In that case, the claim was to a ball valve structure while the improvement was solely in a sealing ring for the valve. The District Court quoting from *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 549–550, 58 S.Ct. 662, 664, 82 L.Ed. 1008, 37 USPQ 1, 3 (1938) held the claim invalid and said:

"[t]he improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

It is, of course, axiomatic that there can be no infringement of an invalid patent. The Bontrager patent is invalid and cannot be infringed by Steury.

As was shown at the trial, the Steury structure differs from Bontrager in a number of material respects and does not respond to or, in other words, does not infringe, the structure defined in the Bontrager claims. Specifically, claim 1 calls for structure not found in Steury as follows:

(a) an elongated flexible substantially incompressible member . . . *connected to the lower end of the inner part* of the telescopic post;

(b) means for shifting said flexible incompressible members . . . to extend said post and elevate said top.

This structure is also included by reference in claims 2, 6, 7 and 10 which "depend" from claim 1.

In the Steury structure, the flexible push rods are *not* connected to the lower end of the inner part of the telescopic post. In fact, Steury's flexible rods extend loosely through the telescopic posts and engage the top directly and are not connected to the telescopic post in any way whereby to provide advantages in manufacturing and function (R. pp. 381, 382). Such specific limitations in a claim cannot be ignored and there is not infringement. *Minnesota Mining And Manufacturing Company v. Permacel-LePage's Inc.*, 334 F.2d 820 (7th Cir., 1964); *Hughes et al. v. Magnolia Petroleum Co.*, 88 F.2d 817 (5th Cir., 1937); *Saunders v. Air-Flo Company*, 435 F.Supp. 298 (ND Ind., 1977).

If an attempt is made to read into the language of the claims' specific structure in an attempt to save validity, the meaning or scope of the phrase "means for shifting . . . . . ." in subparagraph (b) above is limited by 35 U.S.C. § 112 which states in part:

"An element in a claim for a combination may be expressed as a means or step for performing a specified function . . . and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."

Thus, if structure is to be read into the claims, Bontrager's claimed "means for shifting" covers the corresponding structure described in his patent which consists of the winch 100, 102 having a main cable 106 wound thereon and attached to an equalizer or connector plate 108 which in turn is secured to four separate cables 112, 114, 116 and 118 which respectively extend around six various pulleys, 120, 122, 124, 125, 126 and 128, for connection to the various flexible push rods. The claim language also covers mechanical equivalents of Bontrager's multiple cable and pulley arrangement. *Henry v. City Of Los Angeles*, 255 F. 769 (9th Cir., 1919); *Del Francia v. Stanthony Corporation*, 278 F.2d 745 (9th Cir., 1960).

The Steury unit only has a single cable and a single pulley. Thus, the question becomes—Is Steury's single cable arrangement the mechanical equivalent of Bontrager's claimed structure? This question must be answered in the negative. In a closely analogous situation involving a pulley and cable mechanism, it has been held that where the accused structure accomplishes with a single pulley what the patentee required three elements to do, there is no mechanical equivalency or infringement. *Lambert Hoisting Engine Co. v. Lidgerwood Mfg. Co.*, 154 F. 372 (3rd Cir., 1907); see also *Jogger Mfg. Corporation v. Roquemore*, 118 F.2d 867 (7th Cir., 1941).

The lack of equivalency between Steury's actuating means and Bontrager's is reinforced by the fact that the Patent Office allowed the Steury Patent No. 3,674,305 on the basis of the differences in the Steury actuating mechanism over that used by Bontrager. *Saunders v. Air-Flo Company*, 435 F.Supp. 298 (ND Ind., 1977).