Regina Lee AZAR et al., Plaintiffs-
Appellants,

v.

James R. CONLEY et al., Defendants-
Appellees.

No. 71–1243.

United States Court of Appeals,
Sixth Circuit.

Feb. 22, 1972.

Richard A. Ruppert, Rocky River, Ohio, for plaintiffs-appellants.

Joyce J. George, Asst. Director of Law, Akron, Ohio, for defendants-appellees. William R. Baird, Director of Law, Akron, Ohio, on brief for all appellees except Bruce N. Metz, Anna S. Conley, Dale Wolf and William E. Bachtel; James M. Bierce, Akron, Ohio, on brief for Anna S. Conley; James R. Hinton, Akron, Ohio, on brief for Dale Wolf; Bruce N. Metz, on brief pro se.

Stanley K. Laughlin, Jr., Columbus, Ohio, on brief for A.C.L.U. as amicus curiae; Michael E. Geltner, Columbus, Ohio, of counsel.

Before BROOKS,* MILLER and KENT, Circuit Judges.

* This case was argued to a panel consisting of Judges Brooks, Miller and Kent. Judge Brooks died on December 30, 1971 before a decision was reached or an opinion prepared.

WILLIAM E. MILLER, Circuit Judge.

This appeal is taken from the dismissal of a civil rights action brought by a white middle class family pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986.

On May 10, 1970, eight members of the Azar family filed a nineteen-page complaint naming twenty-seven defendants in addition to "John Doe and Richard Roe, Unknown Members of the Police Department of the City of Akron, Ohio." The Azars sought certain injunctive relief in addition to damages totaling $4,650,000. The allegations of the complaint depict a sordid tale of severe harassment and intimidation of the Azar family and of inaction and cover-up on the part of the police and other public officials of Akron. The central character in this alleged story is James R. Conley, the nextdoor neighbor of the Azars and a member of the Akron police force. Other defendants include his wife, Anna Conley; his brother Patrick Conley (also an Akron policeman); a friend, Dale Wolf; members of the Akron police department, including the chief of police and two majors; and other public officials of Akron, including the mayor of Akron, its city councilmen, certain other department heads and two judges of the Municipal Court of Akron.

The district court dismissed the complaint on a variety of grounds which are set forth with clarity in a memorandum opinion filed December 15, 1970. From this dismissal the Azars appeal. We consider each of the grounds for dismissal in turn.[1]

*Adequacy of the Conspiracy Allegations*

The Azars contend that the appellees participated in a conspiracy to deny them their civil rights. These charges focus on alleged inaction and suppression by police and other public officials in the face of active harassment and intimidation of the Azars by James R. Conley, and by Conley's friends and relatives. The complaint alleges that the Azars were denied protection and redress under the law because of Conley's position on the police force. For example, it is alleged that there was an agreement "to avoid saying anything, or doing anything about, any act being committed by a fellow police official or officials of Akron which might reveal the wrongs then being committed by a fellow officer." It is also alleged that certain defendants joined in the conspiracy to deny the plaintiffs' "their rights and privileges under the Constitution of the United States . . ." including the right to liberty and equal protection of the law. Numerous specific acts in furtherance of the conspiracy are set forth. Injury to plaintiffs is clearly delineated. Of these allegations, the district court stated:

In order to state a claim for relief under 42 U.S.C. § 1985, there must be specific allegations showing the existence of a conspiracy. General and conclusory allegations of conspiracy are not sufficient. *It must also be alleged that the conspiring defendants acted with the specific intent to deprive plaintiff of the equal protection of the laws or of equal privileges and immunities under the law.* Cohen v. Norris, 300 F.2d 24 (CA 9, 1962); Huey v. Barloga, 277 F.Supp. 864 (D. C.N.D.Ill., 1967).

The plaintiffs' complaint, construed most favorable to them, does not satisfy those standards. While it is replete with specific allegations, they are allegations concerning individual events, and do not state a claim for

---

1. It is well to note at this point that it is our duty to view the allegations of the complaint in the light most favorable to the plaintiff, assuming the truth of the factual allegations contained therein. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Lucarell v. McNair, 453 F.2d 836 (6th Cir. 1971); and L'Orange v. Medical Protective Co., 394 F.2d 57 (6th Cir. 1968). Furthermore, the fact that this action was brought under one of the civil rights statutes requires us to scrutinize such a dismissal with special care.

a conspiracy with the requisite intent.[2] (Emphasis added.)

We must disagree. In a recent case, Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971),[3] the Supreme Court enumerated the elements of a Section 1985(3) conspiracy:

We return to the petitioners' complaint to determine whether it states a cause of action under § 1985(3) as so construed. To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) *"for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."* It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." 403 U.S. at 102, 103, 91 S.Ct. at 1798, 1799. (Emphasis added.)

The Court illuminated the requisite mental state which is embodied in the statutory language: "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." This aspect of the Civil Rights Act of 1871 has been a source of confusion for some time. Indeed, it has been held on more than one occasion that "specific intent" is a requisite element of a section 1985(3) conspiracy. In *Breckenridge,* the Court rejected this approach.

In the paragraph preceding the above quoted passage the Court stated:

The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. 403 U.S. at 102, 91 S.Ct. at 1798.

And footnoting this passage, Mr. Justice Stewart explained further:

The motivation requirement introduce by the word "equal" into the portion of § 1985(3) before us must not be confused with the test of "specific intent to deprive a person of a federal right made definite by decision or other rule of law" articulated by the plurality opinion in Screws v. United States, 325 U.S. 91, 103, [65 S.Ct. 1031, 89 L.Ed. 1495,] for prosecutions under

---

2. The court below noted correctly that:

The failure to state a claim under § 1985 rules out the applicability of § 1986. That latter statute applies in the case of a person who has knowledge that an act mentioned in § 1985 is about to be done, has the power to prevent the same, and fails to act.

Section 1986 provides in pertinent part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such per-son by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

3. In *Breckenridge,* the Court held that Section 1985(3) does not require state action but reaches private conspiracies or conspiracies involving public and private conduct, and that Congress had the constitutional authority to reach a private conspiracy of the sort alleged in the case before it under the Thirteenth Amendment and the Commerce Clause. The question whether Sec. 5 of the Fourteenth Amendment could also be considered a source of constitutional power to support Sec. 1985(3) was reserved. 403 U.S. at 107, 91 S.Ct. 1790.

18 U.S.C. § 242. Section 1985(3), unlike § 242, contains no specific requirements of "wilfulness." Cf. Monroe v. Pape, 365 U.S. 167, 187, [81 S. Ct. 473, 5 L.Ed.2d 492.] The motivation aspect of § 1985(3) focuses *not on scienter* in relation to deprivation of rights but on *invidiously discriminatory animus.* 403 U.S. at 102, 91 S. Ct. at 1798. (Emphasis added.)

Thus, the Supreme Court found that not "specific intent" but "invidiously discriminatory animus" is the requisite mental state which must be proved to establish a conspiracy under Section 1985(3). In reaching this conclusion the Court reasoned as it had in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961), where it was held that "specific intent" is not a requisite for the establishment of a Section 1983 action. There the Court stated:

> In the *Screws* case we dealt with a statute that imposed criminal penalties for acts "wilfully" done. We construed that word in its setting to mean the doing of an act with "a specific intent to deprive a person of a federal right." 325 U.S., at 103, [65 S.Ct. at page 1036.] We do not think that gloss should be placed on § 1979 which we have here. The word "wilfully" does not appear in § 1979. Moreover, § 1979 provides a civil remedy, while in the *Screws* case we dealt with a criminal law challenged on the ground of vagueness. Section 1979 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. 365 U.S. at 187, 81 S. Ct. at 484. [42 U.S.C. Sec. 1983 is the equivalent of R.S. 1979].

In urging that the district court was correct, the appellees place primary reliance on Huey v. Barloga, 277 F.Supp. 864 (1967), where Judge Will distinguished Monroe v. Pape, supra, concluding that proof of specific intent is necessary for establishment of a Section 1985(3) conspiracy. In *Breckenridge,* the Supreme Court, as noted, rejected this distinction, applying the reasoning of *Monroe* to reach the conclusion that "specific intent" is not required by the language of Section 1985(3).

██ In our view the district court was in error in dismissing the Azars' conspiracy claim on the ground that they had failed to allege "specific intent" or scienter. Rather, assessing the allegations of a Section 1985(3) complaint, a court must determine whether what the Supreme Court termed "invidiously discriminatory animus" has been alleged. The complaint before us alleges in substance the existence of a conspiracy to deny the Azars their constitutionally protected rights.[4] We find that the Azars have adequately alleged the requisite mental state to assert a cause of action under Sections 1985(3) and 1986.[5]

---

4. For example the complaint alleges:

   The conspiracy among the named and unnamed police officers to prevent any official action from being taken against the defendant, James R. Conley, or the police officers, has produced numerous denials of the plaintiffs' lawfully and constitutionally guaranteed rights, privileges and immunities.

5. As we noted at the outset, the Azars are not members of a minority racial group but rather a middle class white family. Whether or not the protection of Section 1985(3) extends to them has not yet been determined by the Supreme Court. In Griffin v. Breckenridge, *supra,* the Court stated:

   We need not decide, given the facts of this case, whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985 (3) before us. Cf. Cong. Globe, 42d Cong., 1st Sess., 567 (1871) (remarks of Senator Edmunds). 403 U.S. at 102, 91 S.Ct. at 1798.

   Because this issue has not been raised and was not decided by the district court, we are not called upon to express an opinion at this time. It is, however, appropriate at this juncture to emphasize the wording of the statute. The Act forbids any conspiracy "for the purpose of depriving . . . *any person or class of persons* of the equal protection of the laws . . . ." While it is true, as the legislative history reveals, that the Civil Rights Act of 1871 was immediately

*Sufficiency of the Section 1983 Charges Based on the "Failure to Act".*

The court below stated:

This leaves for consideration the sufficiency of the complaint to state a claim for relief under 42 U.S.C. § 1983 against the various defendants on an individual basis. Section 1983 grants redress against any "person who, under color of . . . [law] . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights secured by the Constitution and laws" of the United States.

In order to state a claim against public officials under § 1983, a complaint must allege positive acts by such officials. A failure to act is not sufficient. Huey v. Barloga, *supra*; Patrum v. Martin, 292 F.Supp. 370 (D.C.W.D.Ky., 1968).

Such a statement reflects a fundamental misunderstanding of the remedy afforded by Section 1983. In Monroe v. Pape, *supra*, the Court stated:

The debates were long and extensive. It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. 365 U.S. at 180, 81 S.Ct. at 480.

And further:

While one main scourge of the evil —perhaps the leading one—was the Ku Klux Klan, the remedy created was not a remedy against it or its members but against those who representing a State in some capacity were *unable* or *unwilling* to enforce a state law. Senator Osborn of Florida put the problem in these terms:

"That the State courts in the several States have been unable to enforce the criminal laws of their respective States or to suppress the disorders existing, and in fact that the preservation of life and property in many sections of the country is beyond the power of the State government, is a sufficient reason why Congress should, so far as they have authority under the Constitution, enact the laws necessary for the protection of citizens of the United States. The question of the constitutional authority for the requisite legislation has been sufficiently discussed."

There was, it was said, no quarrel with the state laws on the books. It was their lack of enforcement that was the nub of the difficulty. 365 at 175, 176, 81 S.Ct. at 478.

[6] We think that Section 1983 is applicable in the case of acts of omission as well as commission. Insofar as the district court concluded otherwise we must express our disagreement.

*Judicial Immunity*

Two of the defendants were Judges Roulhac and Vanberg of the Municipal Court of Akron, Ohio. The court below held as to them:

Defendants Vanberg and Roulhac, as Judges of the Municipal Court of Akron, Ohio, have immunity from suits under the Civil Rights Act for actions done in the regular performance of their official duties. Andrews v. Murphy, 349 F.2d 114 (CA 6, 1965), cert. den. 382 U.S. 999, 86 S.Ct. 589, 15 L.Ed.2d 486.

The court below appears to be correct on this point. In Lucarell v. McNair, *supra*, this Court discussed briefly the

---

aimed at the protection of blacks in the South after the Civil War, Congress chose the words "any person or class of persons." It is not unreasonable, therefore, to assume that the protection of Section

1985(3) extends not only to blacks and other racial minorities but to *any person* or group that is the object of invidious discrimination.

doctrine of judicial immunity. There we stated:

> Turning to the question of Mc-Nair's asserted immunity, it is true that as Referee and Administrative Officer of the Juvenile Court of Trumball County, McNair was entitled to the full reach of the doctrine of judicial or, in this case, quasi-judicial immunity, and that the doctrine is applicable to actions instituted pursuant to Section 1983. Nevertheless, the doctrine is not without bounds. Some time ago the Sixth Circuit stated its views as to the limits of the protection thus afforded. Manning v. Ketcham, 58 F.2d 948 (6th Cir. 1932), in which we indicated the view that a judge loses all immunity when he acts in absence of all jurisdiction. This rule was discussed at some length in the more recent case of Lynch v. Johnson, 420 F.2d 818 (6th Cir. 1970). See also Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871).

■ There is no claim here, as there was in *Lucarell*, that the judges acted "in absence of all jurisdiction." Accordingly, it follows that the court below acted properly in dismissing the action against Judges Vanberg and Roulhac.

### Dismissal of the Complaint as to Dale Wolf

The second count of the complaint sought recovery solely from Dale Wolf, a friend of James Conley. Wolf was not a member of the Akron police force. He is charged with responsibility for a shot which was fired at the car of Robert A. Azar and which is said to have caused a physical and a psychosomatic reaction in Robert Azar and his mother Julia Helen Azar. The Azars allege further that all attempts to have charges brought against Wolf were suppressed by law enforcement and other public officials. The court below dismissed the second count of the complaint, stating:

> There is nothing in the complaint from which the Court could infer that the acts alleged to have been committed by defendant Wolf, a private citizen, were done under color of law. Consequently, Count Two, which seeks recovery against defendant Wolf alone, is totally deficient.

■ It is, of course, well settled that one may not recover under Section 1983 on the basis of acts not done "under color of law." The complaint does not allege, either explicitly or implicitly, that Wolf was acting "under color of law." It follows that the district court was correct in dismissing any Section 1983 claim against Dale Wolf.

As noted above, Griffin v. Breckenridge, *supra*, held that Section 1985(3) gives rise to a cause of action for recovery on the basis of private conspiracies as well as those done "under color of law." The complaint acknowledges that Wolf "is not a member of the Police Force of the City of Akron, Ohio," but it further alleges:

> However, it has been stated that he is a cousin of James R. Conley; another statement has been made that he is not. In any event, this defendant, Dale Wolf, is a close friend of James R. Conley and Patrick Conley, and is well connected in some fashion with the Police Force and Prosecutors of the City of Akron, Ohio.

■ While this statement is somewhat vague, under applicable liberal rules of pleading, we find that it is sufficient to connect Wolf to the alleged conspiracy charged under Section 1985(3).

### Dismissal of the "Slander" Count

The third count, if considered apart from other portions of the complaint, states in substance a cause of action for slander, enumerating specific vile and insulting statements which the Conleys are alleged to have made publicly about Julia Azar, Rosemarie Azar and Regina Azar. The district court dismissed this court, stating:

> By the same token, the acts alleged in Count Three to have been done by

the defendants James R. Conley, Anna S. Conley and Patrick Conley cannot be considered as having been done under color of law. The cause of action of the third count is rather plainly one for slander, which is not actionable under the Civil Rights Act.

It is true that the Civil Rights Act does not give rise to a cause of action for slander. It is also true that the complaint does not allege that these remarks were made "under color of law." Thus, the allegations of Count Three may not be treated as a substantive claim giving rise to recovery from the three named Conleys as individuals under Section 1983.

However, it is not inconceivable that such slanderous remarks might constitute an integral part of the Section 1985(3) conspiracy which we have found to be adequately alleged in Count One. We hold that these allegations may be considered in this regard and further that under Griffin v. Breckenridge, *supra*, Anna S. Conley (as well as her brothers) is a proper defendant to the charge of conspiracy.

*Dismissal of Certain Specific Section 1983 Claims Against James and Patrick Conley and Nicholas La Monica*

The complaint charged James R. Conley, Patrick Conley, and Nicholas La Monica, all policemen, with certain affirmative acts of harassment and intimidation. Included, for example, is the allegation that the two Conleys were found prowling on the Azars' property wearing their uniforms. Of these allegations, the district court stated:

This leaves for consideration the sufficiency of Count One of the complaint to state a claim under 42 U.S.C. § 1983 against James R. Conley, Patrick Conley and Nicholas LaMonica, each of whom is an Akron policeman.

Defendant Patrick Conley is specifically referred to in paragraph 16 of the complaint. Therein, it is alleged that one evening in the Summer of 1969 James R. and Patrick Conley were prowling in the backyard of the plaintiffs' residence, and that as a result of certain events that transpired Patrick Conley filed an assault and battery charge against plaintiff Elmer Azar.

In filing the assault and battery charge defendant Patrick Conley exercised a right granted to all private citizens. Such act would not be under color of law by virtue of Patrick Conley's status as a member of the Akron Police Department. Although, the complaint alleges that "these named defendants were then claiming to act under the color of authority granted them as police officers," there are no factual allegations which would support that conclusion. The mere fact that a person who is upon the lands of another without permission as a police officer does not render the act of trespass as one done under color of law.

Again, we find the district court overly restrictive in its interpretation of Section 1983, especially at the pleading stage. It is clear that the protection of Section 1983 extends to the unauthorized abuse of authority by public officials. In Monroe v. Pape, *supra*, the Court stated:

There can be no doubt . . . that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it. 365 U.S. at 171–172, 81 S.Ct. at 476, 5 L.Ed.2d 492.

In Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), the Supreme Court said of the same language in 18 U.S.C. section 242, the criminal law counterpart of section 1983:

If, as suggested, the statute was designed to embrace only actions which

the State in fact authorized, the words "under color of any law" were hardly apt words to express the idea. 325 U.S. at 111, 65 S.Ct. at 1040.

In the same paragraph Mr. Justice Douglas stated:

It is clear that under "color" of law means under "pretense" of law. 325 U.S. at 111, 65 S.Ct. at 1040.

And in Lucarell v. McNair, *supra*, this Court had occasion to reiterate this principle, stating:

The Supreme Court has made clear that official misconduct which amounts to a deprivation of civil rights may be found to be "under color of state law" within the meaning of Section 1983 even though the misconduct violates state law or constitutes an abuse of authority.

▆▆▆ As the district court acknowledges, the complaint alleged that ". . . these named defendants were claiming to act under the color of authority granted them as police officers of the City of Akron. . . ." While it may be found at trial that no deprivation of the Azars' civil rights occurred on this occasion, we think that the district court erred in holding that the complaint did not adequately allege that James and Patrick Conley had acted under color of law in connection with this incident. Thus, we cannot agree that this aspect of the complaint may be dismissed as to these defendants at the pleading stage on the ground relied upon by the court below.

The complaint makes only one specific allegation regarding La Monica:

In one of the trials, Policeman Nichols LaMonica, during a recess of a trial which took place in January, 1970, told the plaintiff, Robert Edward Azar, "We'll see you behind bars —or *kill* you!" This statement was made in front of several witnesses.

*Of this the district court stated:*

The only specific reference to defendant Nichols LaMonica is in paragraph 20 of the complaint. In the Court's opinion, the allegations thereof regarding this defendant fail to demonstrate the exercise of power under color of law, nor do they state any invasion of a constitutionally protected right within the ambit of 42 U.S.C. § 1983.

▆▆▆ We agree that this allegation, considered alone, does not state a cause of action under Section 1983. Nevertheless, it must be pointed out that, even though the Section 1983 action was properly dismissed as to him, La Monica is an appropriate defendant to the 1985(3) and 1986 charges in Count One. As the complaint is structured La Monica's courtroom outburst might conceivably be found at trial to be part of or reflective of a conspiratorial pattern of conduct.

*Dismissal Under Rule 8(e) (1), F.R.C.P.*

Having dismissed the bulk of the complaint on the grounds discussed above, the district court found that some of the allegations concerning James R. Conley "do appear to state facts actionable under 42 U.S.C. § 1983 . . . ." Nevertheless, the district court dismissed these allegations on the ground that the complaint does not comply with Rule 8(e) (1):[6]

As the Court has found that all defendants with the exception of James R. Conley are entitled to a dismissal of the complaint as against them, and as the great majority of the allega-

---

6. Rule 8(e) (1) of the Federal Rules of Civil Procedure provides:
   Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

tions of the complaint would thus allege facts extraneous to the assertion of a claim for relief under 42 U.S.C. § 1983 against James R. Conley, it is the Court's conclusion that the complaint must be dismissed for failure to comply with Rule 8(e) (1) of the Federal Rules of Civil Procedure. Defendant James R. Conley could not reasonably be expected to answer to the complaint as it stands.

We cannot agree that the Azars should be denied an opportunity to prove the very serious charges which they make against James R. Conley on the basis of Rule 8(e) (1). While the complaint is certainly something less than a model of conciseness, it is not the sort of "gross violation" of Rule 8(e) (1) that has on occasion led to dismissal under the rule.[7] Our own reading does not suggest that "James R. Conley could not reasonably be expected to answer to the complaint as it stands." Rather, the charges against Conley seem relatively clear. Dismissal is not justified because the allegations are many and involve numerous other defendants. It is appropriate here to observe the statement of the Third Circuit that:

> A case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. Scher v. Board of Education of West Orange, 424 F.2d 741, 744 (3rd Cir. 1970).

Also, since our ruling reinstates considerable portions of the complaint, the basis of the district court's Rule 8(e) (1) conclusion is no longer tenable.

The judgment (or orders) of the district court dismissing the complaint is hereby vacated and the action is remanded for further proceedings and the entry of further orders not inconsistent with this opinion.

---

7. See discussion in 2A Moore's Federal Practice, 2nd ed. ¶ 8.30, pp. 1881, 2.