John F. MURPHY

v.

VILLANOVA UNIVERSITY.

Civ. A. No. 80–4581.

United States District Court,
E. D. Pa.

July 7, 1981.

On Second Motion to Amend
Aug. 20, 1981.

John F. Murphy, pro se.

Raymond T. Cullen, Michael R. Lastowski, for defendants; Morgan, Lewis & Bockiss, Philadelphia, Pa., of counsel.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

John Murphy, a law student formerly enrolled in Villanova University's work-study program, has brought suit *pro se*, pursuant to 42 U.S.C. § 1983, against Villanova and certain Villanova employees alleging that the defendants wrongfully terminated his employment and/or refused to hire him, in contravention of his civil rights. Mr. Murphy now moves to amend his complaint to include allegations arising under 42 U.S.C. §§ 1985(3), 1986 and 1988.

Our Court of Appeals has recently discussed the scope of section 1985(3) and the relationship of that provision to section 1986:

> Section 1985(3) establishes a cause of action against any person who enters into a private conspiracy for the purpose of depriving the claimant of the equal protection of the laws. Section 1986 is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution. Because transgressions of § 1986 by definition depend on a pre-existing violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fall also.

The Supreme Court's most thorough discussion of these sections was in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). There, several black persons brought suit under § 1985(3) alleging that the defendants, a group of white Mississippians, conspired and acted to deprive the plaintiffs of their equal rights by beating and threatening to kill them. The Court rejected the defendants' argument that the statute required state action, and interpreted it as covering purely private conspiracies as well. To effect Congress' intent not to embrace all tortious conspiratorial interferences with the rights of others, however, the Court held that § 1985(3) applied only to private conspiracies predicated on "racial, or perhaps otherwise class-based, invidiously discriminatory animus."

*Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir. 1980) (notes omitted).

 Since *Griffin*, the Supreme Court has not had occasion to determine the question there expressly reserved—"whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the [equal protection] portion of § 1985(3) . . ." 403 U.S. at 102 n.9, 91 S.Ct. at 1798 n.9. Nor has our Court of Appeals had occasion to determine this question. *Rogin, supra*, 616 F.2d. at 697. Other courts of appeals have, however, found section 1985(3) applicable to protect persons "who are victims of a conspiracy due to their sex," or "who are victims of a conspiracy because of their political beliefs or associations." *Kimble v. D. J. McDuffy, Inc.*, 623 F.2d 1060, 1066, *vacated*, 629 F.2d 1159 (5th Cir. 1980), *en banc opinion*, 648 F.2d 340 (1981).[1] But, assuming the correctness of the decisions referred to in the panel's decision in *Kimble, supra*, they offer no support for the proposition that the class of which Mr. Murphy is a member—students enrolled in a university work-study program who wish thereafter to qualify for university employment compensated by *non-work-study funds*—is cognizable under the statute.

> While § 1985(3) has been liberated from the now anachronistic historical circumstances of reconstruction America, we may not uproot § 1985(3) from the principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights. This underlying principle must continue to determine the coverage of § 1985(3).

1. The scope of § 1985(3) was not an issue on rehearing by the *en banc* court; *en banc*, a thirteen-judge majority of the Fifth Circuit held that all causes of action arising under any of the four clauses of § 1985(2) also require proof of a racial or otherwise class-based animus. *See also Courtney v. Reeves*, 635 F.2d 326, 327 n.1 (5th Cir. 1981).

2. Section 1988, also relied on by Mr. Murphy, does not (attorney's fees aside) purport to create a federal cause of action distinct from those authorized by sections 1981, 1982, 1983, 1985 and 1986.

*DeSantis v. Pacific Telephone & Telegraph Co., Inc.*, 608 F.2d 327, 333 (9th Cir. 1979). Mr. Murphy's proffered class of former work-study students cannot pretend to be the subject of such a "Governmental determination."

Since Mr. Murphy's proposed amended complaint does not state a cause of action under section 1985(3)—or derivatively, under section 1986[2]—the motion to amend is, in the accompanying Order, denied.

## ON SECOND MOTION TO AMEND

### I.

On July 7, 1981, I filed a Memorandum and Order denying Mr. Murphy's motion to amend his complaint to include allegations arising under 42 U.S.C. §§ 1985(3), 1986 and 1988, in connection with his suit charging Villanova University with wrongfully denying him employment.[1]

On July 13, 1981, Mr. Murphy filed a "Second Motion to Amend," asking that I reconsider the July 7 decision, and suggesting that I was "under a misapprehension as to the facts of the case" regarding "the scope of the defendants' conspiracy."

Mr. Murphy's clarification in his latest Memorandum argues, in essence, that the requirement under section 1985(3)—that defendants' "class-based invidiously discriminatory animus"[2] be alleged—can be met entirely with an allegation that a "fundamental right" has been infringed on by defendants.

Some support for that position may be found in *Santiago v. City of Philadelphia*, 435 F.Supp. 136, 156 (E.D.Pa.1977), where

1. Mr. Murphy alleges that the University erroneously interpreted regulations promulgated under the work-study program, 42 U.S.C. § 2751, to prohibit further non-work-study employment at the University after he had earned the limit of work-study funds.

2. *Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir. 1980), *quoting Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Chief Judge Lord held a § 1985(3) claim met

> if the plaintiff can allege that there is discrimination against a well-defined class, *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973), and that such discrimination: ... (3) unnecessarily burdens plaintiff's exercise of a "fundamental" right. *Local No. 1 (ACA) v. [International Brotherhood of Teamsters*, 419 F.Supp. 263, 277 (E.D.Pa.1976)].

A *Cameron* "well-defined class" is precisely that: any class at all that can be "clearly defined." *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973). Such criteria bring within § 1985(3)'s protection supporters of a political candidate, *id.*, and a single "middle class white family," *Azar v. Conley*, 456 F.2d 1382, 1386 n.5 (6th Cir. 1972). As an abstraction of the Supreme Court's formulation in *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)—that § 1985(3) protects against "class-based invidiously discriminatory animus"—*Cameron* simply eliminates the requirement described in my earlier memorandum: That is, the requirement that protected classes beyond those of race—if such there be under the statute—must, at a minimum, be those specially selected for Governmental protection.[3] Mr. Murphy's present argument in effect subsumes the standard equal protection analysis, together with its emphasis on certain target classes, in a "fundamental right" matrix, under which the right not to be discriminated against is only one of a series of rights privately enforceable under § 1985(3). But if § 1985(3) were read as creating a cause of action against those depriving the plaintiff of any "fundamental right," *Griffin's* "discriminatory animus" would be diluted, indeed, transformed, to some weak cognate of "evil motive."

■ In any event, Mr. Murphy's proffered fundamental right—the right to work with a given professor at Villanova University on university funds—will not qualify:

"the right to any particular private employment" simply is not enforceable under § 1985(3). *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 380–81, 99 S.Ct. 2345, 2353, 60 L.Ed.2d 957 (1979) (Powell, J. concurring).

■ Mr. Murphy has also moved to have added to the complaint a count of "common law conspiracy." The only conspiracy discernible in the proposed complaint is one "intentionally and purposely to deprive the Plaintiff of his rights under federal law." ¶ 6. This apparently refers to 42 U.S.C. § 1985(3). As it is, the allegations of conspiracy do not specify that the conspiracy (1)(a) was to accomplish unlawful ends, or (b) used unlawful means; or (2) was intended solely to injure the plaintiff. *Compare Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 472–73 (1979). Thus, I will not undertake to exercise pendent jurisdiction over the proposed state claim.

Accordingly, I will not modify the July 7, 1981 Memorandum and Order denying Mr. Murphy leave to amend his complaint.

## II.

Mr. Murphy has also filed a motion for summary judgment and a supporting memorandum asserting two causes of action: "an implied cause of action under the Work-Study statute [42 U.S.C. § 2751 *et seq.*]; and various Civil Rights statutes." Memorandum at 28. The memorandum disclaims a motion for summary judgment under 42 U.S.C. § 1983, and the other "Civil Rights statutes" to which Mr. Murphy refers are not part of this case. See above.

■ Remaining, then, is the suggestion of an implied cause of action under the work-study program. *See generally, Universities Research Association, Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). Mr. Murphy's submission, however, does not describe the elements of the cause of action, nor, *a fortiori*,

---

**3.** A *Cameron* class, it seems, might be simply made up of those with a common complaint against defendants, a result which the Fifth Circuit recognized eviscerates the meaning of

the controlling Supreme Court decision, *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340 at 347–48 (1981) (*en banc*).

does it marshal undisputed evidence to support these elements. The memorandum does not appear to address the propriety of summary judgment under the implied cause of action at all but instead speaks, at some length, to its propriety under causes of action previously eliminated from this case. Memorandum at 33–57. Under these circumstances, I cannot enter summary judgment for the plaintiff.