## FINISH ENGINEERING COMPANY, INC.

v.

## ZERPA INDUSTRIES, INC.

### Civ. A. No. 84–202 ERIE.

United States District Court, W.D. Pennsylvania.

June 27, 1985.

David C. Hanson, Webb, Burden, Robinson and Webb, Pittsburgh, Pa., for plaintiff.

Harry Martin, Erie, Pa., Henry G. Bunsow, and Gayle Hutchins Gossett, Townsend and Townsend, San Francisco, Cal., for defendant.

OPINION

GERALD J. WEBER, District Judge.

This is an action under the patent laws of the United States and under the Declaratory Judgment Act seeking a declaratory judgment on the invalidity of a patent issued to defendant and a preliminary and permanent injunction against the enforcement of the patent against an alleged infringement by the plaintiff. The patent involved is Patent No. 4,457,805, "Solvent Recovery Apparatus and Method" issued on the application of the Inventor Pastor, and assigned to the defendant Zerpa Industries, Inc. The patent was applied for on April 22, 1983 and during the pendency of the patent application the defendant notified plaintiff that it was infringing on the claims of the Pastor patent. Plaintiff filed a protest before the Patent Office but the patent was issued on July 3, 1984. This action was filed on the date the patent was issued.

Plaintiff has filed a motion for partial summary judgment addressed to Claims 1 through 7 and Claim 14 of the Pastor patent. Plaintiff's motion asserts that the subject matter of the Pastor patent would have been obvious to one of ordinary skill in the art at the time the invention was made within the meaning of 35 U.S.C. § 103 of the Patent Law.

The Pastor invention is described in the patent as follows:

[57]

ABSTRACT

Apparatus and method for recovering clean solvent from a mixture of solvent and contaminants. The apparatus included an open top tank mounted in a housing below a sink in which articles to be cleaned with solvent are to be placed. The sink has a tap through which solvent is directed so that the articles can be cleaned by hand in the sink itself. A disposable, plastic bag is receivable in the tank and the tank is closed by a cover. Contaminated solvent can flow from the sink, through the cover and in

to the bag in the tank. Contaminated solvent in the bag is heated by heating a liquid surrounding the side wall of the tank and below the bottom of the tank so that the solvent in the bag will vaporize. A tube leading out of the tank carries solvent vapor into a heat exchanger where the vapor is condensed to form clean, liquid solvent, and the liquid solvent is collected in a reservoir. A pump is coupled to the reservoir for pumping liquid solvent to the tap at the sink. The bag can be disposed of after the solvent has been vaporized therefrom.

The claims of the patent in issue here are set forth in the patent as follows (Column 4):

What is claimed is:

1. In a solvent recovery apparatus having means for providing a distilling mode and means for providing an emptying mode, the improvement comprising:

a tank;

means for heating the interior of said tank;

a plastic bag; and

means for mounting said plastic bag within said interior, said means for mounting being designed, positioned and dimensioned for forming a substantially liquid-tight barrier between contaminated solvent within said plastic bag and said means for heating during said distilling mode, and for enabling easy removal and disposal of said plastic bag when containing a substantial quantify of residue remaining from the evaporation of said contaminated solvent during the emptying mode.

2. Solvent recovery apparatus as set forth in claim 1, wherein said bag is a flexible, open top bag which conforms to said tank when filled with solvent.

3. Solvent recovery apparatus as set forth in claim 2, wherein the bag is formed from nylon.

4. Solvent recovery apparatus as set forth in claim 2, wherein said supporting means includes means engageable with the upper end of the bag for releasably holding it to the tank.

5. Solvent recovery apparatus as set forth in claim 4, wherein said holding means includes a resilient member.

6. Solvent recovery apparatus as set forth in claim 1, wherein said tank has a bottom wall, the bag being at least partially supported by the bottom wall when the bag is received in said tank.

7. Solvent recovery apparatus as set forth in claim 6, wherein said heating means is below said bottom wall of the tank.

. . . . .

14. Solvent recovery apparatus as set forth in claim 6, wherein said tank has an open top, and including a cover for removably closing the open top of said tank.

## THE STANDARDS FOR DETERMINING OBVIOUSNESS

The determination of obviousness under § 103 has been fully treated in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Three conditions are imposed, each of which must be met to satisfy the requirements of the statute:

While the ultimate question of patent validity is one of law, *A. & P. Tea Co. v. Supermarket Corp.*, [340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), at 155], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobvious-

ness, these inquiries may have relevancy. (383 U.S. 17–18, 86 S.Ct. 693–694).

## SCOPE AND CONTENT OF
## THE PRIOR ART

Three references to the prior art are cited in the patent and were considered by the Examiner, among others, and plaintiff relies on these three in support of its claims of obviousness. They are:

| | | |
|---|---|---|
| 2,794,570 | 6/1957 | Downs ...220/63 |
| 3,890,988 | 6/1975 | Lee ......134/10 |
| 4,323,429 | 4/1982 | Hoover ...202/83 |

We begin our review of the prior art by reference to U.S. Patent No. 3,890,988, the Lee patent, issued June 24, 1975, for a "Cleaning Assembly for Automotive Parts and the like". This patent describes an apparatus very similar to the construction of the Pastor patent, a faucet and sink for cleaning mounted atop a container for the outflow. It shows the use of a plastic bag lining the container which receives the contaminants. The difference between the Lee patent and the Pastor patent is that the apparatus in Lee contemplates cleaning the contaminants from the solvents by a straining and filtering process, while the Pastor patent contemplates the use of a distillation mode. Otherwise they are remarkably similar as shown by the following quote from the Lee patent:

[57]

## ABSTRACT

A metal sink with a faucet sits over a container in which is situated a pump having a screened intake and being connected to the faucet. The pump is supported on a cone or deflector support, and the contaminated solvent discharges by gravity from the sink onto the cone which spreads it circumferentially and acts as a primary separator or filter. A layer of water acts as a trap for grease and oil contaminants and the pump, which is situated in the solvent within the cone, is provided with a relatively fine screen on the intake side thereof. A plastic liner in the container permits disposal of contaminants and the like thereby eliminating undesirable discharge of the contaminants into the sewage disposal system.

This apparatus is remarkably similar to the Pastor invention except for the purification of the contaminated solvent in the container by a distillation process which deposits the clean solvent into a separate receptacle from which it is then pumped to the faucet in the sink. The Lee patent further describes the plastic liner and its use as follows: (references to drawings omitted).

In the embodiment shown ..., a plastic liner or bag is provided for the container ... said liner or bag being placed in the container first whereupon the motor and pump ... and the support is placed on the base of the container. The sink is then placed on top of the container after filling same with the combination of solvent and water as hereinbefore described.

When it is desired to remove heavy contamination from the container, the relatively clean solvent is pumped from the container through the nozzle ... it being observed that the lower end of the screen intake ... is always situated within the solvent layer but spaced from the base of the container. Once the solvent has been removed for further use, the sink can be removed together with the pump and motor and its support. At this point the top of the plastic bag can be folded and tied and the water together with the contaminants and a small layer of solvent may be disposed of by regular garbage disposal facilities. By the same token if it is desired to change or renew the solvent, the old solvent can also be disposed of within the liner or plastic bag....

(Column 4, line 66 through column 5, line 19).

The second item of prior art cited by the movant is U.S. Patent No. 2,794,570, Downs, "Lined Tanks" issued June 4, 1957. The invention is described in column 1, beginning line 15, as

My invention relates to a tank which includes a replaceable liner. Further, my invention relates to a liner assembly which may be used to protect a tank from damages by the fluid held therein. It is the purpose of my invention to extend the life of fluid-holding tanks by the utilization of a flexible liner which may be easily mounted within a tank and removed and cleaned or disposed of after use for a period of time. It will be appreciated that the various deposits carried by fluids which adhere to tanks may be easily removed and disposed of merely by the removal of my liner assembly. Another advantage is the ability of my liner assembly to withstand extreme heat and other conditions such as solvent and chemical attack, moisture and exposure to rapidly changing temperatures.

My research has discovered that a film, preferably a polyester film produced from a material which is the reaction product of ethylene glycol and terephthalic acid and which is known to the trade by the Du Pont trademark "Mylar", can be utilized for the protection of tanks by mounting the film on a continuous band-like insert which is in turn adjustably affixed in overlying engagement with the inner face of a flange joint of a tank.

The difference between the Downs patent and the Pastor patent lies in the description of the solid receptacle for the liquid materials. Downs recites a "tank" whereas the receptacle in Pastor is called a "hot still". Downs discloses a flexible liner for a container for liquids in the same manner that Pastor describes a container for liquids lined by a flexible lining bag. The flexible liner in Pastor has nothing to do with the "distillation mode" of the Pastor apparatus.

A third item of prior art is U.S. Patent No. 4,323,429 Hoover, "Spent Solvent Purification Apparatus", issued April 6, 1982. This is embodied in a commercial product known as the EPAR (Electrically Powered Solvent Recovery) product. The Pastor patent acknowledges the EPAR solvent re-covery system as prior art. This Hoover patent discloses a small batch solvent recovery still described as "a solvent recovery apparatus having means for providing a distilling mode and a means for providing an emptying mode," ... "a tank", "means for heating the interior of said tank". The only features of the Pastor patent which are not shown in the EPAR unit are the "plastic bag" and the "means for mounting said plastic bag...". The EPAR brochure mentions the residue problem as follows. "If the contaminants would without the solvent, turn solid then the residue will transpose into a solid mass that is non-degradable and easily disposed of." Pastor on the other hand recites that the contaminants can be thoroughly dessicated by the evaporation process and disposed of in the plastic bag.

## THE RELEVANT ART AND THE DIFFERENCE BETWEEN THE PRIOR ART AND THE CLAIMS AT ISSUE

The Examiner determined that the prior reference to the Downs' patent was nonanalogous art. He made a distinction between "batch still art" and "lined tank art".

The determination that a reference is from a nonanalogous art is therefore twofold. First, we decide if the reference is within the field of the inventor's endeavor. If it is not, we proceed to determine whether the reference is reasonably pertinent to the particular problem with which the inventor was involved.

*Union Carbide Corp. v. American Can Company,* 724 F.2d 1567, 1572 (C.A.F.C. 1984).

We find that the Pastor's endeavor was to design a portable apparatus for cleaning industrial parts with an industrial solvent, and recovering the solvent for reuse in a purified form. This involved principally a sink with a faucet and a receptacle underneath to collect the solvent (a tank) with a means for returning the purified solvent to the faucet for reuse. This is the teaching of Lee. Lee utilized a strainer or filter to

clean the solvent before reuse. Hoover utilized an evaporation and distilling process. Essentially both inventors were endeavoring to design a tank. Downs describes a tank with a plastic liner.

The second test of *Union Carbide* is an examination of the particular problem with which the inventor was involved and the patent in question spells out this problem, "easy removal of residue from tanks", Pastor patent, column 1, lines 37–38, column 2, lines 1–6, column 2 lines 14 through 20. Because the container underneath the sink in the patent in question was lined with a means for heating the collected residue for evaporation and distillation, the Examiner distinguished this apparatus by designating it as a "hot still" as differentiated from a "tank" despite the use of this terminology in the very patent application which he was considering.

■ We find the Examiner's characterization of the prior art to be a departure from the prior law.

The prior art is not to be narrowly confined to the methods and inventor of the subject art, but extends to other analogous arts. *Graham,* 383 U.S. 1, 19 [86 S.Ct. 684, 694], 148 USPQ 459, 467; *Application of Wood,* 599 F.2d 1032, 202 USPQ 171 (CCPA 1979). Prior art extends beyond the subject art to arts with similar elements, problems and purposes. *Skega Aktiebolag v. B.F. Goodrich Co.,* 420 F.2d 1358, 164 USPQ 333 (6th Cir. 1970); *Bontrager v. Steury Corp.,* 457 F.Supp. 526, 536, 201 USPQ 813, 820–821 (N.D.Ind.1978), aff'd. 624 F.2d 1103 (7th Cir.1979). While many cases illustrate this principle, we cite here some salient examples. *Graham,* 383 U.S. 1 [86 S.Ct. 684], 148 USPQ 459 (prior art not limited to insecticide containers or sprayer caps, but extends to solutions of mechanical closure problems); *I.U. Technology Corp. v. Research-Cottrell Inc.,* 641 F.2d 298, 209 USPQ 545 (5th Cir.1981) (art of cement chemistry is pertinent prior art to field of scrubber sludge waste disposal where problem is stabilizing waste in cementitious composition); *Geo. J. Meyer*

*Manufacturing Company v. San Marino Electronic Corp.,* 422 F.2d 1285, 165 USPQ 23 (9th Cir.1970), (art of missile detection systems is prior art for device in bottle manufacturing art used to detect foreign particles in glass); *Skega Aktiebolag v. B.F. Goodrich Co.,* 420 F.2d 1358, 164 USPQ 333 (6th Cir., 1970) (art of securing rubber tires to metal rims is prior art for a patented rotary ball mill used for grinding ore, where the common problem is clamping rubber to metal); *Bontrager v. Steury Corp.,* 457 F.Supp. 526, 201 USPQ 813 (N.D.Ind. 1978); aff'd. 624 F.2d 1103 (7th Cir.1979) (prior art for patent on lift system on collapsible trailer is broader than vehicles and extends to lift systems and jacks generally); see also cases collected in 23 A.L.R. Fed. 326, 376. It is also true that the more remote prior art is from the context of the subject matter, the less persuasive it becomes on the question of obviousness. *Frank W. Egan & Co. v. Modern Plastic Machinery Corp.,* 387 F.2d 319, 156 USPQ 433 (3d Cir. 1967); *Colourpictures Publishers, Inc. v. Mike Roberts Color Productions, Inc.,* 394 F.2d 431, 157 USPQ 659 (1st Cir.) cert. denied, 393 U.S. 848 [89 S.Ct. 134, 21 L.Ed.2d 118], 159 USPQ 799 (1968).

*L.D. Schreiber Cheese Company v. Clearfield Cheese Company,* 540 F.Supp. 1128, (W.D.Pa.1982), *affd.* 716 F.2d 891 (3d Cir. 1983).

It is this narrow distinction which the Patent Examiner made which in his judgment distinguished the relevant arts. He found that the Pastor patent referred to "batch still art" as distinguished from "lined tank art". The Examiner stated that distinction in his report as follows:

Moreover, the Downs references, drawn to the art of lined tanks, is sufficiently remote from batch still subject matter of the proposed primary references, that, but for the guidance of applicant's disclosure, the routineer would not be motivated to make the proposed combination. (p. 6, Plaintiff's Exhibit 7).

We find the Patent Examiner's distinction legally untenable for reasons which we will elaborate on more fully later.

What is being described in all of the relevant art which we are considering here is a receptacle for a relatively small amount of fluid material. While the Downs invention discusses variable sizes of tanks the Lee patent describes the container as a conventional 45 gallon oil drum or the like and the Hoover and Pastor tanks are designed for holding a comparably small quantity of liquid in that they are described as being portable or rolled about on castors in the industrial plant. The defendant describes the container as a 15–20 gallon receptacle.

The critical element in this case is the use of a plastic bag to line the inside of a metallic container which receives contaminated solvent used to clean industrial parts. In the prior art the contaminated solvents are cleaned by either a straining or filtering process, or by evaporation and distillation as in the present patent and plaintiff's competing product, and the remaining residue of solid or heavily contaminated matter is removed from the container by the removal of the plastic bag insert and is disposed of through such disposal methods as are appropriate particularly with reference to present day environmental controls for the disposal of chemical waste. The idea is as simple as the use of plastic bags in the household to line containers for kitchen refuse, garbage cans, waste baskets and the like. Defendant's patent contemplates a still for the purification of the chemical solvent as does plaintiff's competing product and this requires a plastic container capable of allowing the heat transfer necessary for the operation of a still and the resistance of the plastic material to such heat. The wide-spread use of this idea is illustrated by the common household use of plastic bags for boiling frozen foods and vegetables and for the roasting of meat, such as chickens or turkeys.

Defendant argues that Downs requires a large spherically joined tank liner which is intended *to prevent* corrosion of the tank rather than for removing residue. Regardless of the intent behind the use of a liner, the Downs patent specifically contemplates the easy removal of the liner and the residue collected therein.

Therefore, we find that the problem facing the inventor in the patent in question is the particular problem illustrated in both the Downs patent and the Lee patent, the easy removal of deposits from containing tanks. We therefore find as a matter of law that the Downs patent and the Lee patent are in the same art or in an art extremely closely analogous to the Pastor patent.

The defendant strongly urges upon us the opinion of the Court of Appeals for the Federal Circuit in *Alfred Cooper v. Ford Motor Company,* 748 F.2d 677 (C.A.F.C. 1984), where the district court was reversed on its grant of summary judgment for obviousness of the invention. In one aspect of its opinion, the Court of Appeals stated:

> Although not specified by the district court, it does not appear to have accepted *either* party's version of the prior art teachings, because the combination of the Greenberg, O'Neal and Swiss patents, on the basis of which the district court found Cooper's claimed invention to have been obvious, was not advanced by Ford. We find merit in Cooper's position that contested material fact issues relate to these patents and their combination.

> \* \* \* \* \* \*

> Cooper asserts that the district court erred in its *sua sponte* holding of invalidity based on the Swiss patent standing alone.

> \* \* \* \* \* \*

> Moreover, the Federal Rules do not contemplate that a court may dispose of a cause by summary judgment, when the basis for the judgment was not raised by the movant with sufficient precision for the nonmovant to respond. *See Murphy v. Villanova Univ.,* 520 F.Supp. 560,

563–64 (E.D.Pa.1981). ... Ford's memorandum in support of its motion discussed the Swiss patent only as support for Ford's arguments regarding non-infringement, not invalidity. (page 680).

All of this is relevant to the question before us because the court, at the oral argument on the motion, stated that considering the Lee patent (a sink mounted atop a drum in which the contaminated solvent was collected, filtered, and pumped back to the sink), and the Hoover patent (a sink, atop a drum, where the contaminated solvent is heated, distilled and pumped back to the sink), described the Pastor patent in issue here.

The parties had full opportunity to argue the court's considerations and both had the opportunity to file post argument briefs and supplemental evidentiary material.

■ The plaintiff had presented the three patents in support of its argument on prior art; Downs, Lee and Hoover. We suggested at argument that Lee and Hoover illuminated the prior art. These are readily understandable references and we find no genuine issue as to what these references show. Where the patent in question and the prior art can be understood without expert testimony we believe the case is appropriate for summary judgment. *See Union Carbide v. American Can Co.*, 724 F.2d 1567 (C.A.F.C.1984).

We find that the defendant's reliance on *Cooper v. Ford Motor Company* not to be pertinent because the problem facing the Court there was:

> In the instant case the undisputed facts are no more than the existence of the prior art patents. Beyond that, we have no evidence on either side explaining their teachings, which are not clearly evident simply on reading the references....

> Expert testimony is not always necessary to explain the prior art, but here reasonable alternative arguments were put forth as to its interpretation. 748 F.2d 679.

The device in Cooper is somewhat complex; the device in question here is simple. The prior art of Lee, Downs and Hoover was raised by plaintiff with sufficient precision for the nonmovant to respond. Full argument on these prior art patents was held before the court, and both parties were given the opportunity to file further briefs and evidentiary materials, which they did.

> Many, if not most suits for patent infringement give rise to numerous and complex fact issues, rendering those suits inappropriate for summary disposition. Where no issue of material fact is present, however, courts should not hesitate to avoid an unnecessary trial by proceeding under Fed.R.Civ.P. 56 without regard to the particular type of suit involved.

*Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–79 (C.A.F.C. 1983).

## THE LEVEL OF SKILL IN THE ART

Those skilled in the art involved in the Pastor patent would ordinarily be engineers or technicians involved in the designing and building of chemical processing equipment. They would be knowledgeable in the fields of receiving and holding tanks, pumps for the recirculation of fluids, pot stills, filters and screens. They would be familiar with plastic containers, the properties of plastic films and their ability to transfer heat.

But here we have only to consider a plastic bag to contain liquids and solid residue, capable of withstanding and transferring heat. The common experience of every householder with plastic garbage bag liners and plastic bags for boiling or roasting meat encompass this field.

■ Since the difference, if any, between the prior art and the claims at issue are clear, the level of ordinary skill is a remaining inquiry on the question of obviousness under *Graham*. As previously indicated, and as is clear from an examination of the drawing figures contained in the patent, the Pastor patent is an extremely simple

device. Also, the structures disclosed in the prior art are simple, requiring no additional explanation. Thus, it is proper for the court to "postulate a minimum of skill in the art as being the same as that of an intelligent layman." *Allen-Bradley Company v. Air Reduction Co., supra,* 273 F.Supp. 930 at 936 (W.D.Pa.1967). As the Court of Appeals for the Federal Circuit declared in *Chore-Time Equipment, Inc.:*

> "We hold only that 'an invention may be held to have been either obvious (or nonobvious) without a specific finding of a particular level of skill or the reception of expert testimony on the level of skill where, as here, the prior art itself reflects an appropriate level and a need for such expert testimony has not been shown." [affirming the use of a level of skill of the "ordinary layman of average intelligence"]. 713 F.2d at 779, n. 2.

The court clearly does not need expert testimony here to assist it in understanding the patent and the prior art. Thus, it can resolve this issue on the basis of the level of skill of an intelligent layman.

■ The court is well aware that there is no requirement that an invention be complicated to be patentable. The simplicity of an applicant's invention does not operate as a bar to its patentability. *Globe Linings, Inc. v. City of Corvallis,* 555 F.2d 727 (9th Cir.1977).

## THE PRESUMPTION OF VALIDITY

■ Patents issued by the United States Patent Office enjoy a presumption of validity under 35 U.S.C. § 282. This presumption is a procedural device which places the burden of proving invalidity on the party attacking the validity. "The presumption, like all legal presumptions is a procedural device, not substantive law." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534 (C.A.F.C.1983). "A presumption does not enjoy the status of evidence. If a finding on the evidence is made that a presumed fact has been effectively rebutted, the presumed fact ceases to exist. It does not linger on to be weighed against the evidence." *Panduit Corp. v. All*

*States Plastic Mfg. Co., Inc.,* 744 F.2d 1564 (C.A.F.C.1984).

In assailing the validity of a patent regularly issued by the Patent Office, plaintiff has a heavy burden of proof, and the presumption of validity which attaches to the grant must be overcome by the one asserting invalidity. Moreover, the presumption is strengthened in a case where the prior art relied upon to invalidate the patent was considered and rejected by the Patent Office. *Anderson Co. v. Sears, Roebuck & Co.,* 265 F.2d 755, 761 (C.A.Ill.1959). However, presumptions may not be used to transmute the products of mechanical skill into patentable inventions. *Frank Adam Elec. Co. v. Colt Patent Fire Arms Mfg. Co.,* 148 F.2d 497, 502 (C.C.A.Mo.1945). And the section giving duly issued patents a presumption of validity does not require that presumption be accorded the weight of actual evidence or that use of the presumption affect a decision of invalidity that would otherwise be reached with confidence. *Lorenz v. F.W. Woolworth Co.,* 305 F.2d 102, 105 (C.A.N.Y.1962). The most that can be said of the presumption is that it requires a reasonable doubt to be resolved in favor of the patent holder. *Id.*

The record before us on this motion for summary judgment is identical to the record established before the Examiner. The thrust of the movant's argument is that the Examiner misapplied the rule as to analogous art and, therefore, did not give it sufficient weight. It is the Examiner's legal conclusion on analogous art which is the basis for the attack on his conclusion and the basis for rebutting the presumption of validity which the issuance of the patent confers.

The Patent Examiner distinguished the Downs patent from the Pastor device indicating that "Downs obviously involves a more or less permanent liner and obviously deals with, more or less, minor amounts of deposits." In fact, the Examiner allowed claim 51 (see Claim 1) of the Pastor application, *only after* the patentee added "a substantial quantity of [residue]" to the claim

to distinguish it from Downs. These distinctions by the Examiner appear illogical.

Downs involves "utilization of a flexible liner which may be easily mounted within a tank and removed and cleaned or disposed of after use for a period of time" while Pastor claims "means for mounting ... enabling easy removal and disposal of the plastic bag." There does not appear to be any basis in fact or reason for the examiner's distinction regarding permanence of the liner. Further, the Downs patent says nothing about "minor" and "substantial" amounts of residue, and the Downs patent inherently involves an apparatus capable of removing larger amounts of deposits while the Pastor device may be used to remove either minor or substantial quantities of residue.

## COMMERCIAL SUCCESS

Defendant raises the issue of commercial success, but defendant fails to support this success as being the result of its invention. Plaintiff has produced evidence that is not contested of the growing market for small stills because of the great growth of environmental concern against pollutants and the extensive governmental control over their disposal. One need only observe the tremendous growth of the use of plastic disposal bags in every aspect of our current "throw-away" civilization to account for such commercial success.

> "Such secondary consideration as commercial success ... might be used to give light to the circumstances surrounding the origin of the subject matter to be patented. As indicia of obviousness or non-obviousness these inquiries may have relevancy."

*Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966). We find the element of commercial success to be equivocal and of little probative value on the issue of obviousness here.

## THE FINISH PATENT APPLICATION

As a final post-hearing argument Zerpa presents documents and briefs showing a patent application submitted by Finish subsequent to the Pastor patent. Initially Finish claimed the use of a plastic liner bag as a patentable invention. Later Finish, by amendment, withdrew its claims to use of a plastic liner bag. Zerpa claims that the withdrawal of these claims by Finish, in the light of the pending Pastor application, constitute an admission by Finish that the use of a liner bag in a solvent recovery still constitutes a patentable invention.

Finish draws our attention to the fact that it never claimed the mere use of the plastic bag an independent claim, but solely as a dependent claim to the claimed invention, a novel heater that did not require heat transfer fluid, on which claim a patent was issued.

> A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers. 35 U.S.C. § 112.

■ The claims relating to the use of the plastic bag were revealed prior to the Pastor application in Lee and Downs. Therefore, we cannot find that their withdrawal was a recognition of the validity of the Pastor claims. We find no disputed issue of fact here sufficient to bar summary judgment, but solely a matter of counsel's argument on their legal effect.

The motion for summary judgment will be granted. An appropriate order will issue.

## ORDER

AND NOW this 27th day of June, 1985, in accordance with the accompanying opinion, IT IS ORDERED, ADJUDGED and DECREED that:

1. Plaintiff's motion for summary judgment is GRANTED:

2. Claims 1 through 7 and claim 14 of the Pastor patent issued July 3, 1984, Patent No. 4,457,805 are ADJUDGED invalid;

3. Defendant is permanently ENJOINED from enforcing said patent against plaintiff or any of plaintiff's customers.